**CLARK OIL AND REFINING CORPORATION, a Wisconsin corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 67-C-318.**

United States District Court, E. D. Wisconsin.

May 3, 1971.

Roger C. Minahan, John L. Palmer, and Alfred A. Heon, Milwaukee, Wis., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., by David A. Wilson, Jr., Daniel J. Dinan, Nestor M. Nicholas, Attys., Dept. of Justice, Washington, D. C., and David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendant.

REYNOLDS, Judge:

## OPINION AND ORDER

This is a suit for refund of $185,431.-20 of federal income taxes which the plaintiff paid after the Commissioner of Internal Revenue disallowed a $322,500 deduction on the taxpayer's federal income tax returns for the fiscal years of 1959 and 1960. The issue is whether the amounts paid by taxpayer in settlement of litigation, which involved the transfer of real estate, and attorneys' fees were deductible as ordinary and necessary business expenses rather than nondeductible capital expenditures. I hold that the payments involved were nondeductible capital expenditures and therefore find for the Government.

## FINDINGS OF FACT

Plaintiff (hereinafter "Clark") is a corporation organized and doing business under the laws of the State of Wisconsin and has its principal refinery in Blue Island, Illinois. Clark is on the accrual basis.

William C. Richards and Grace J. Richards of Hinsdale, Illinois, owned the real estate involved in the litigation (hereinafter "Richards property") located at 3108 West Vermont Avenue in Blue Island which was ultimately surrounded on three sides by Clark's refin-

ery. The Richards purchased this property in 1946. At that time there was a paint reclaiming business on the property. Richards operated a toy manufacturing proprietorship on the property until 1949 when he took over the paint business. From 1949 to the present, Richards only business was the manufacturing, reclaiming, and reprocessing of paint. Richards formed corporations to own and operate his business and the Richards property; their ownership interests will be referred to as "Richards."

In 1949 Clark began purchasing property in the immediate vicinity to the Richards property, and by various acquisitions of property, Clark in 1953 had the Richards property surrounded on all sides except for the Vermont Avenue side to the south. In 1952, Clark built the Haudry Cat. Cracker for $4,000,000; and in 1957, Clark constructed the fluid cat. cracker at a cost of approximately $6,000,000 on its property. The Clark facilities, i. e., crackers, were adjacent to and surrounded the Richards property on the three sides.

The existence of a paint factory in the middle of an oil refinery was highly undesirable and very dangerous because the Haudry Cat. Cracker, during the course of its operation, emitted gas, smoke, acid fumes, and very hot ceramic fines onto the Richards property. These fines were a definite fire hazard, and because the paint factory was so close to the cracker there was always a potential threat of explosion. In order to eliminate this dangerous situation, Clark, beginning in the year 1953, made several attempts to purchase the Richards property. However, no sale was ever consummated because Clark and Richards could not agree on a price.

Despite the obvious nuisance caused by Clark's trespasses onto the Richards property and the threat of a potential explosion, the actual damage done to the Richards property by the nuisance was minimal. In any event, it was no more than the out-of-pocket loss suffered by Richards of approximately $5,000. Richards never claimed any casualty loss deductions during the years 1953 through 1960 by reason of damage inflicted upon their property by Clark.

At no time did Mr. Richards ever consider selling his property for less than an amount which he thought would be sufficient to allow him to purchase another piece of property and to relocate his business in another area without any economic loss to himself or his company. In 1957, after having a study made by contractors, plumbers, electricians, etc., Mr. Richards estimated that his cost of finding comparable property and relocating his business would be $275,000.

On July 29, 1958, the Richards filed a lawsuit against Clark and certain of its officers in the Superior Court of Cook County, Illinois, in chancery. Richards requested that the court grant an injunction against alleged nuisances and trespasses committed by Clark on the property and requested a recovery of $1,000,000 in damages. At a hearing on a motion to default and a motion for temporary injunction, Judge Sbarbaro, the presiding judge, indicated that despite the hardship to Clark he might very well grant an injunction. The primary cause of all the trouble between Clark and Richards was the nuisance created by Clark's cracker. At the time of the suit, Clark did not know if the cracker could be fixed to prevent the cause of nuisance and, if so, how much it would cost.

There was a real threat to Clark of an injunction sometime in the immediate future and a real threat of future injunctions, since Clark did not know whether the cracker which was causing the nuisance that Richards was seeking to have enjoined could be fixed.

An injunction would have cost Clark a minimum of $25,000 a day. Accordingly, the very substance of the Clark corporation was in dire jeopardy if any injunction were granted.

Clark was also confronted with the problem that if there was an explosion in the future, its liability for damage to life and property could be in the millions of dollars.

Clark decided that if the refinery was to be operated at the Blue Island location, the only way it could be certain that there would be no future injunctions which would stop operations, and that it would not have to pay millions of dollars of damages in the future to Richards and/or other third parties on the Richards premises because of an explosion, was to "remove" Richards from the property. The only way Clark could "remove" Richards from that property was to buy the property.

After Judge Sbarbaro had indicated that he might very well grant the injunction that was being requested, Clark suggested that the case be settled. The case was to be settled by Clark's purchasing the Richards property from Richards.

When the parties could not agree as to a purchase price, they decided they would submit the settlement to arbitration. The arbitration agreement, drafted by Clark's attorneys, provided that an arbitrator would be selected by Clark, an arbitrator would be selected by Richards, and an arbitrator would be selected by the presiding judge. The three would compute the amount to be paid by Clark to Richards for its property. The arbitration agreement provided that the following four elements were to be considered in computing a fair price for the Richards property: (1) The cost of acquiring like land; (2) the cost of erecting similar buildings; (3) the cost of moving; and (4) the cost of any economic loss which Richards might suffer during the move. Also, the arbitration agreement provided that Judge Sbarbaro would fix a fifth item to be considered in the total price paid by Clark to Richards—attorneys' fees. The arbitration agreement states nothing with regard to any payment being made by Clark to Richards in lieu of damages that Clark may have committed on Richards prior to the settlement of this lawsuit.

Both the reports of the arbitrator selected by Clark and the arbitrator selected by Richards and the majority decision, upon which the sum of $287,500 transferred by Clark to Richards is based, state very clearly that the only factors which were taken into consideration with regard to computing the price that Clark was to pay for the Richards property was the cost of acquiring like land and buildings, the cost that Richards might incur by having to move his operation, and the cost of any loss of profits that Richards might incur during the move. The reports provide nothing with regard to the fact that the arbitrators in any way took into consideration the damages which Clark may have caused Richards prior to the settlement of the suit in computing the price that Clark was to pay Richards. The majority decision of the arbitrators, providing that based on the first four items of the arbitration agreement Clark should pay to Richards $287,500, was filed with Judge Sbarbaro and made a part of the record in the equity action on November 24, 1959.

In a sworn memorandum of law presented to the court in February of 1960, after the arbitration agreement had been entered into and after the arbitrators had computed the amount to be awarded Richards pursuant to the first four items of the arbitration agreement, Clark stated unequivocally that it was its understanding and its intention that no part of the amount to be paid by Clark to Richards was to be paid in lieu of damages which Richards may have suffered because of the trespasses caused by Clark. Rather, the amount paid was only to give Richards a fair price for his property and thereby eliminate the hazards which had caused a potentially disastrous lawsuit to Clark.

On March 17, 1960, Judge Sbarbaro entered an order in the equity action ap-

proving and finding the following: approving the arbitration and settlement agreement of July 24, 1959; approving the determination of the Board of Arbitrators of November 24, 1959; finding that $287,500 should be paid by Clark to Richards for items 1 through 4 of the arbitration agreement; and approving its own award on February 18, 1960, of $35,000 to be paid by Clark to Richards for attorneys' fees under item 5 of the arbitration agreement.

A stipulation of the parties dismissing the action was executed on March 24, 1960, and filed with the court on September 8, 1960, and an order of the court dismissing the action with prejudice was entered on September 8, 1960.

Clark was not worried about the damage aspect of the suit. Clark knew that it had caused very little damage, and the actual amount that it would have to pay for damages was minimal.

Clark's primary concern and the reason why it decided to settle the lawsuit was the economic damage which any future injunction might cause Clark and the potential damages, which could run into millions of dollars, that Clark would have to pay Richards and/or third parties if Clark caused an explosion on the Richards property.

At trial, Clark provided no testimony with regard to what the actual damage it had caused to the Richards property was, nor did it submit any evidence with regard to how much damage it thought it may be liable for, except for the testimony with regard to some minor flooding and some minor damage done to employees' automobiles.

On its income tax return, Clark treated its gross payments to Richards as a payment in part for the purchase of the Richards property in the amount of $25,000 and treated the balance as a payment for liquidating damages, for which it took a deduction pursuant to Section 162 of the Internal Revenue Code. Also, Clark took a deduction, except for the amount of $35,000 for attorneys' fees, in the year 1959.

## CONCLUSIONS OF LAW

The court has jurisdiction in this matter pursuant to the provisions of § 1346 of the United States Code.

■ Section 162 of the Internal Revenue Code of 1954 provides, in relevant part, that a deduction may be taken for ordinary and necessary business expenses. No deduction can be taken for a capital expenditure. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). An expenditure should be treated as one in the nature of a capital expenditure if the expenditure brings about the acquisition of an asset having a useful life in excess of one year or if the expenditure secures a like advantage to the taxpayer which has a life of more than one year. United States v. Akin, 248 F.2d 742 (10th Cir. 1957), certiorari denied 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed. 2d 532 (1958); Sears Oil Co. v. Commissioner, 359 F.2d 191 (2d Cir. 1966); Clark Thread Co. v. Commissioner, 100 F.2d 257 (3d Cir. 1935); American Dispenser Co., Inc. v. Commissioner, 396 F.2d 137 (2d Cir. 1968).

Whether or not the money was expended in settlement of a lawsuit is not controlling with regard to the question of whether part or all of the money so expended is deductible. If, pursuant to the settlement of a lawsuit, Clark makes a capital expenditure, or an expenditure which does not specifically come within the purview of one of the provisions in the Code which permits a deduction, that expenditure is not deductible. Wise v. Commissioner, 311 F.2d 743 (2d Cir. 1963); United States v. Wheeler, 311 F.2d 60 (5th Cir. 1962), certiorari denied 375 U.S. 818, 84 S.Ct. 54, 11 L.Ed. 2d 53 (1963); American Dispenser Co., Inc. v. Commissioner, 396 F.2d 137 (2d Cir. 1968).

■ The Seventh Circuit in Anchor Coupling Co. v. United States, 427 F.2d 429 (1970), discussed in considerable detail the various factors to be considered in determining whether or not the transfer of an asset in the settlement of a specific performance lawsuit should be

treated as a capital expenditure. The *Anchor* court held on page 433 "that the origin and character of the claim with respect to which a settlement is made, rather than its potential consequences on the business operations of a taxpayer is the controlling test of whether a settlement payment constitutes a deductible expense or a nondeductible capital outlay." Applying this test, I have concluded that Clark's settlement payment constitutes a capital outlay because Richards' claim against Clark arose out of the inability of the parties to arrive at a price for the Richards property. It is true that the lawsuit took on the form of a nuisance action seeking an injunction, but there was no doubt in the parties' minds that what they were really arguing about was the price that Clark would have to pay for the Richards property. These cases should not be decided by a "resort to formalisms and artificial distinctions." Woodward v. Commissioner, 397 U.S. 572, 577, 90 S. Ct. 1302, 1306, 25 L.Ed.2d 577 (1970).

In addition, even if there were payments in lieu of damages, and I do not think there were, the taxpayer has failed to demonstrate exactly how much was paid in lieu of damages, and such amount is therefore deductible within the purview of § 162 of the Code. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

The failure to make such an allocation by Clark deprives Clark of any deduction. Murphy Oil Co. v. Burnet, 55 F.2d 17 (9th Cir. 1932), affirmed 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318.

Clark cannot meet its burden by simply stating that the amount expended could not be for a capital asset, and therefore the amount must be deductible. Clark has failed to clearly show what the expenditure is and why the expenditure should be deductible. If the expenditure is one which fits neither the precise terms of expense or capital expenditure, then the expenditure is not deductible. Kauai Terminal LTD. v. Commissioner, 36 B.T.A. 93, and Baltimore & Ohio Railroad Co. v. Commissioner, 29 B.T.A. 368, affirmed 78 F.2d 460.

The $322,500 transferred by Clark to Richards was transferred for the purchase of the Richards property and all rights incidental to that property. Accordingly, the amount transferred for the property and rights inherent in the property is a capital expenditure and none of it can be deducted. None of the $322,500 paid by Clark to Richards was paid in lieu of damages which Clark may have caused Richards prior to the settlement agreement and, therefore, none of that amount can be deducted.

Clark failed to meet its burden of proof with regard to allocating what portion of the $322,500 was paid for an item which is deductible and, therefore, even if part of the amount so paid, which I do not think it was, may have been an expenditure which would be deductible, Clark is entitled to no deduction in the present case.

The foregoing constitutes my findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Based on the foregoing,

It Is Ordered that judgment be entered in favor of the defendant and against the plaintiff.