William J. McDONALD, Sr. and Elizabeth J. McDonald, Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellant.

No. 642, Docket 77–4179.

United States Court of Appeals, Second Circuit.

Argued Feb. 17, 1978.
Decided Aug. 8, 1978.

Thomas M. Walsh, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and William S. Estabrook, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellant.

William J. McDonald, Sr., Geneva, N. Y., pro se (William J. McDonald, Jr., Geneva, N. Y., on the brief), for appellees.

1. For convenience, we refer to appellee William J. McDonald, Sr. as "the taxpayer" or as "McDonald". His wife, Elizabeth J. McDonald, is an appellee also, but only because she signed joint returns with her husband.

2. Unless otherwise stated, all statutory citations in this opinion are to sections of the Internal Revenue Code of 1954 as amended, which in turn correspond to sections of Title 26 of the United States Code, 1970 codification.
   For example, here, Int.Rev.Code of 1954, § 162(a), 26 U.S.C. § 162(a) (1970), *as amended by* Revenue Act of 1962, § 4(b), Pub.L.No.87–834, 76 Stat. 960.

3. The deficiencies determined by the Commissioner were as follows:

Before LUMBARD, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

The Commissioner appeals from a decision of the Tax Court entered June 30, 1977, on the memorandum opinion of Howard A. Dawson, Jr., *Chief Judge,* T.C.M. (P–H) ¶ 77,202, which overruled the Commissioner's determination of deficiencies aggregating $33,939.60 in the taxpayer's [1] income taxes for the years 1970 through 1973. The Tax Court held, contrary to the Commissioner's determination, that the taxpayer owed no further taxes for the years in question.

The sole question presented is whether the Tax Court erred in concluding that the taxpayer was entitled, under Int.Rev.Code of 1954, § 162(a),[2] to a business expense deduction for 1973 in amount of $121,400, that being the sum which was paid to the relatives of a decedent in compromise of a will contest.

For the reasons stated below, we reverse and remand the case to the Tax Court with directions to enter a deficiency judgment against the taxpayer in the amount claimed by the Commissioner, $33,939.60,[3] with interest according to law.

I.

The facts are not in dispute. The case was submitted to the Tax Court, without a trial, on a stipulation of facts.

| Taxable Year | Deficiency |
|---|---|
| 1970 | $ 6,813.40 |
| 1971 | 8,380.37 |
| 1972 | 1,229.83 |
| 1973 | 17,516.00 |
| Total | $33,939.60 |

The taxpayer claimed that a net operating loss carryback from the year 1973 resulted from the alleged business expense deduction involved herein. He filed amended returns for the taxable years 1970 through 1972 claiming refunds. Initially, the Commissioner allowed the refunds. Later he disallowed the deduction for 1973 and the loss carryback. He also disallowed the refunds for the three previous years and determined deficiencies for those years as set forth above.

The taxpayer, William J. McDonald, Sr., is an attorney. He has been a member of the New York bar since 1950. He practices law in Geneva, New York.

One of McDonald's clients was Mrs. Hazel A. Leckie, an elderly widow who died February 28, 1972. McDonald and his wife had befriended Mrs. Leckie.

On August 21, 1968 Mrs. Leckie executed her will. It was not prepared by McDonald. Under the will certain specific bequests were made to McDonald and his wife; they also were named as beneficiaries of the residuary estate; and they were named as executor and alternate executor, respectively.

On November 6, 1970 Mrs. Leckie executed a codicil to her will. The codicil was prepared by McDonald. It revoked a specific bequest of $10,000 to a former employee of Mrs..Leckie and included the $10,000 in the residuary estate, of which McDonald and his wife were the beneficiaries.

Upon the death of Mrs. Leckie in 1972 her will and codicil were offered for probate in the Surrogate's Court for Ontario County, New York. Her relatives filed objections, alleging that the bequests to McDonald and his wife had been obtained by the exertion of undue influence over Mrs. Leckie.

On November 15, 1972 the objections were withdrawn and the will and codicil were admitted to probate. This was done pursuant to a compromise agreement between the relatives and the McDonalds. Under the agreement the relatives withdrew their objections in return for the McDonalds' agreement to pay $121,400 to the relatives. After approval of the agreement by the Surrogate's Court on April 23, 1973 McDonald paid the agreed sum to the relatives during the remainder of 1973.

One of the recitals in the agreement stated that the compromise had been reached in part because "it appears that the litigation of the issues would engender much publicity and would endanger the reputation of William J. McDonald as an attorney. . . . ."

This recital gave rise to McDonald's claim that he was entitled to a miscellaneous itemized deduction, on Schedule A of his joint federal income tax return for 1973, in amount of $121,400 for "preservation of reputation". The Commissioner's determination of deficiencies in the taxpayer's income tax for the four years 1970–1973, see note 3 *supra,* resulted from his disallowance of the taxpayer's $121,400 "preservation of reputation" deduction for 1973 and hence the absence of any loss to carry back to the three prior years.

On the taxpayer's petition to the Tax Court for a redetermination that no deficiency existed, the Tax Court on June 29, 1977 filed its memorandum opinion upholding the taxpayer's claim. The Tax Court concluded that the taxpayer's payments for "preservation of reputation" are fully deductible under Int.Rev.Code of 1954, § 162(a), as ordinary and necessary business expenses. From the decision entered June 30, 1977 on that opinion, the Commissioner has taken the instant appeal.

## II.

■ This case turns on the narrow issue as to whether the Tax Court was correct in holding that the relatives' objections to the probate of Mrs. Leckie's will were related to McDonald's professional activities as an attorney in such a way as to warrant allowance of a business deduction under § 162(a). We hold that the Tax Court erred in so holding.

■ The appropriate legal standard to be applied in determining the deductibility of a payment made in settlement of a disputed estate is the "origin-of-the-claim" test, not the "primary purpose" test which was applied by the Tax Court below.

In the leading case of *United States v. Gilmore,* 372 U.S. 39 (1963), the Court considered the deductibility of divorce litigation expenses as business expenses. The taxpayer argued that, if allowed to stand unchallenged, allegations of infidelity might have caused revocation of his automobile franchise. Speaking through Mr. Justice Harlan, the Court rejected this argument:

"[T]he characterization, as 'business' or 'personal', of the litigation costs of resisting a claim depends on whether or not the claim *arises in connection with* the taxpayer's profit-seeking activities. It does not depend on the *consequences* that might result to a taxpayer's income-producing property from a failure to defeat the claim. . . ." *Id.* at 48 (emphasis that of the Court).

The *Gilmore* test has been applied to litigation expenses in the form of payments in settlement of a lawsuit. *E. g., Anchor Coupling Co. v. United States,* 427 F.2d 429, 433 (7 Cir. 1970); *accord, Clark Oil & Refining Corp. v. United States,* 473 F.2d 1217, 1220 (7 Cir. 1973). *Cf. Woodward v. Commissioner,* 397 U.S. 572, 577–78 (1970) (test of deductibility based on taxpayer's "primary purpose" in undertaking litigation rejected; emphasis on "origin and character of the claim" against taxpayer).

We conclude that the *Gilmore* test has been applied in a manner sufficiently broad to warrant its application here. What places its application in the instant case on a slightly different footing from other cases is that McDonald was both a friend of, and an attorney to, Mrs. Leckie. In looking at the origin of the claim with respect to which the settlement payment was made, we must determine whether the claim arose in connection with McDonald's friendship for Mrs. Leckie or his "profit-seeking activities" as her attorney.

We see no merit whatsoever to the taxpayer's claim that the origin of the settlement payment here involved was connected with his professional activities as an attorney. The settlement of a dispute with regard to inheritance is virtually the paradigm of a personal concern. The fact that, for some purposes, a codicil republishes a will under state law does not suffice to turn an attack on the will into an attack on the

taxpayer's competence as an attorney. Rather, the relatives' objections to the probate of the will involved allegations that the McDonalds had abused an elderly widow's friendship and had unduly influenced her to name them as the primary beneficiaries of her will.

We hold, under *Gilmore* and its progeny, that the payment to settle this disputed estate, regardless of the taxpayer's business motivations for settling, were "personal" litigation costs and as such were not deductible under § 162(a).

 We reverse the decision of the Tax Court and remand the case with directions to enter a deficiency judgment against the taxpayer in the amount claimed by the Commissioner, $33,939.60, with interest according to law.[4]

*Reversed and remanded.*

money that was ever in the taxpayer's possession. Since property received by a taxpayer in compromise of a will contest is inheritance and not income, *e. g., Lyeth v. Hoey,* 305 U.S. 188 (1938), it is evident that the payment of a sum in compromise of such a contest likewise is not an expense.

---

4. In view of our holding above, it is not necessary to reach the government's alternative ground for reversal of the Tax Court decision. We do note our agreement, however, with the argument of the government that the settlement payment here involved cannot be treated as a deduction because it does not represent