**CLARK OIL AND REFINING CORPORATION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 71-1587.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1972.

Decided Feb. 8, 1973.

Roger C. Minahan, Milwaukee, Wis., for plaintiff-appellant.

Fred B. Ugast, Acting Asst. Atty. Gen., William S. Estabrook, Atty., Tax Div., Dept. of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendant-appellee.

Before KILEY and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.*

CAMPBELL, Senior District Judge.

This is an action for refund of $185,-431.21 of federal income taxes paid by the plaintiff after the Commissioner of Internal Revenue disallowed $297,500.00 in deductions, as ordinary and necessary business expenses, taken by the plaintiff on its 1959 and 1960 federal income tax returns. The deductions represent all but $25,000.00 of the sum of $322,500.00 paid by Clark to a Mr. and Mrs. William C. Richards in settlement of a nuisance action brought by the Richards in state court and founded upon Clark's extra-legal usurpation of certain property owned by the Richards. The nuisance action was settled with the transfer of Richards' property to Clark and the payment of $322,500.00 to the Richards. The only question in this appeal is whether the $322,500.00 settlement of the Clark-Richards litigation was an ordinary and necessary business expense deductible from current income under Section 162(a) [1] of the Internal Revenue Code of 1954, or a nondeductible capital expenditure under § 263 of the Code.[2]

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. § 162 of the Internal Revenue Code of 1954 provides in pertinent part:
(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including— . . ."

2. § 263 of the Internal Revenue Code of 1954 reads in pertinent part:
(a) *General Rule.*—No deduction shall be allowed for—
(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

The district court, 326 F.Supp. 145, determined that the amount paid in settlement of the litigation was a non-deductible capital expenditure, and the plaintiff has appealed.

The facts, which are largely undisputed, are concisely summarized in the opinion of the district court. Needless repetition will be avoided here. Clark owned property adjacent to that of the Richards in Blue Island, Illinois, and on that property operated its principal refinery. The Richards operated a paint business on their property. By 1953 Clark had purchased all of the property surrounding the Richards' land except for Richards' access to an adjacent highway. Thus, Richards' property was surrounded by Clark's land on three sides. The existence of a paint factory in the middle of an oil refinery was highly undesirable and very dangerous because of the refinery's activities. The operation of the refinery caused gas emissions, smoke and acid fumes and very hot ceramic fines to fall upon the Richards' property. These items were a definite fire hazard and created a potential threat of explosion. In order to eliminate this dangerous situation Clark, beginning in 1953, made several attempts to purchase the Richards' property. However, no sale was consummated because Clark and Richards could not agree on a price. The actual damage to Richards' property over the years due to the nuisance created by Clark was quite minimal. Richards' out of pocket losses never exceeded $5,000.00.

At no time did Mr. Richards ever consider selling his property for less than an amount which he thought would be sufficient to enable him to purchase another piece of property and to relocate his business in another area without any economic loss to himself or his Company. In 1958 Richards' filed suit against Clark in the Superior Court of Cook County, Illinois. He requested that the Court grant an injunction against the alleged nuisances and trespasses committed by Clark and sought recovery of one million dollars in damages. The judge informally indicated to the parties that despite the inconvenience to Clark, he was inclined to grant an injunction. Such an injunction would have cost Clark a minimum of $25,000.00 a day. At this juncture the parties decided to settle their dispute by way of Clark purchasing Richards' property. They could not agree on a purchase price, however, but agreed to submit the question to final and binding arbitration. The arbitration agreement provided that the following four items were to be considered in computing a fair price for Richards' property:

(1) Cost of acquiring like land;

(2) Cost of erecting similar buildings;

(3) Cost of moving; and

(4) Cost of any economic loss which Richard might suffer during the move.

The arbitration agreement also provided that the trial judge would fix reasonable attorneys' fees to be paid by Clark to Richards' counsel. The agreement stated nothing with regard to any payment being made by Clark to Richards in lieu of damages that Clark may have committed on Richards' property prior to the settlement of the law suit. The arbitrators recommended the payment of $287,500.00 and the judge added $35,000.00 as reasonable attorneys' fees. On stipulation of the parties the action in the Circuit Court was then dismissed. On its income tax returns Clark treated its gross payment to Richards as a payment in part for the purchase of Richards' property in the amount of $25,000.00 and treated the balance as a payment for liquidating damages for which it took a deduction pursuant to § 162 of the Internal Revenue Code.

■■ As a general rule an expenditure should be treated as a non-deductible capital expense if it brings about the

acquisition of an asset having a useful life in excess of one year or if the expenditure secures a like advantage to the taxpayer which has a life of more than one year. American Dispenser Co., Inc. v. Commissioner, 396 F.2d 137 (2d Cir. 1968); Sears Oil Co. v. Commissioner, 359 F.2d 191 (2d Cir. 1966); United States v. Akin, 248 F.2d 742 (10th Cir. 1957), cert. denied, 355 U.S. 956, 78 S.Ct. 542, 2 L.Ed.2d 532 (1958). Whether the expenditure was made in connection with the settlement of a law suit does not govern the determination of whether it represents a capital expense. Cf. Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); United States v. Hilton Hotels Corp., 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970); United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). The decision of this circuit in the Anchor Coupling Co. v. United States, 427 F.2d 429 (1970), discussed extensively the various criteria to be considered in determining whether a payment in settlement of a law suit constitutes a capital expenditure. After analyzing the pertinent decisions of the Supreme Court,[3] this court described the test as follows:

> "Accordingly, we hold that the origin and character of the claim with respect to which a settlement is made, rather than its potential consequences on the business operations of a taxpayer is the controlling test of whether a settlement payment constitutes a deductible expense or a nondeductible capital outlay."

Applying this test, the district court concluded that the settlement payment made here by Clark amounted to a non-deductible capital expense. We agree.

Clark maintains, however, that the origin and character of the claims made by the Richards in connection with the State court litigation represented a meritorious lawsuit in tort for damages and injunctive relief. The settlement was reached, Clark submits, not for the purpose of consummating the purchase of Richards' property but rather to avoid liability, present and future, that might arise as a result of Clark's operations. The difficulty with Clark's formulation of the "origin and character" of Richards' claim against it is that it ignores the history of the dealings between these parties which occurred prior to the commencement of the nuisance litigation.

The entire dispute between Clark and the Richards arose in connection with the use of Richards' property. Through its tortious conduct Clark had in effect preempted Richards' lawful and peaceful use of his own property. The litigation was commenced only after efforts at reaching an agreeable purchase price for the sale of the property had proved unsuccessful. Although the law suit represented a serious threat to the successful operation of Clark's business, these potential consequences to its business operations do not, under *Anchor Coupling*, control the determination of the tax treatment to be accorded the settlement payments. While it is true that the law suit took the form of a nuisance action for damages, there was never any doubt that what the parties were attempting to accomplish was to establish a price that Clark would have to pay for Richards' property. The acquisition of this property was at the heart of the dispute between Clark and the Richards. This was the true "origin and character" of the Richards' claim within the meaning of *Anchor Coupling*. Considering the substance of the entire transaction, rather than its form, we conclude that the settlement permitted Clark to acquire a

---

3. Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); United States v. Hilton Hotels Corp., 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970); United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963).

capital asset which must be treated for tax purposes as a nondeductible capital expenditure.

For the reasons stated, the judgment of the district court is

Affirmed.