114 T.C. No. 27


UNITED STATES TAX COURT


AMERICAN STORES COMPANY AND SUBSIDIARIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13142-97.                    Filed May 26, 2000.


        P purchased the stock of LS.  Prior to purchasing
LS, P had negotiated with the Federal Trade Commission
to satisfy the antitrust concerns about the purchase.
Shortly after P's purchase of LS, and 1 day after the
FTC entered its final consent order, the State of
California filed an antitrust suit in Federal District
Court objecting to P's purchase of LS.  The State asked
for various remedies including divestiture.  The
District Court issued a temporary injunction
prohibiting P from integrating the business operations
of LS and P.  The District Court's opinion was the
subject of an appeal and was ultimately resolved by the
Supreme Court.  Thereafter, P and the State settled the
antitrust suit.  P incurred substantial legal fees in
defending against the State's antitrust suit.  Those
legal fees were deducted as ordinary and necessary
business expenses.  R disallowed those deductions based
on R's determination that the legal fees should be
capitalized.

<u>Held</u>: P's legal fees incurred in defending against the State's antitrust suit arose out of, and were incurred in connection with, P's acquisition of LS. The origin of the State's antitrust claim was P's acquisition of LS. P's legal fees must be capitalized.

<u>Fredrick J. Gerhart</u>, <u>Kevin M. Johnson</u>, and <u>Thomas Edward Doran</u>, for petitioner.

<u>Mark H. Howard</u>, for respondent.

OPINION

RUWE, <u>Judge</u>: Respondent determined deficiencies of $7,963,850 and $1,773,964 in petitioner's Federal income tax for its taxable years ending January 28, 1989, and February 3, 1990, respectively (hereinafter referred to as the 1989 and 1990 tax years). After concessions, the only issue for decision is whether petitioner may deduct or must capitalize legal fees and costs (legal fees) incurred in defending an antitrust suit brought by the State of California subsequent to petitioner's acquisition of Lucky Stores, Inc. This case is before the Court fully stipulated. See Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

## Background

Petitioner is an affiliated group of corporations which annually files a consolidated Federal income tax return. American Stores Company (American Stores) is the common parent of

the affiliated group, and it filed the petition on behalf of all eligible members of the group pursuant to section 1.1502-77, Income Tax Regs. At the time the petition was filed, American Stores, a Delaware corporation, maintained its mailing address and principal office at 709 East South Temple, Salt Lake City, Utah. Petitioner files its income tax returns on the basis of a 52-53-week fiscal year ending on the Saturday nearest to each January 31. Petitioner prepared and filed the consolidated income tax returns for its 1989 and 1990 tax years using the accrual method of accounting.

By January 28, 1989, American Stores and its subsidiaries operated approximately 1,917 retail units in 39 States. During the 1989 and 1990 tax years, petitioner principally engaged in the retail sale of food and drug merchandise. Petitioner is one of the nation's leading retailers, operating combination drug/food stores, super drug centers, drug stores, and food stores. Petitioner sells both food and nonfood merchandise such as prescription drugs, tobacco products, housewares, health and beauty aids, and sundry merchandise for home and family use. Petitioner maintains a substantial inventory for its various retail grocery and drug stores throughout the nation.

Prior to its acquisition of Lucky Stores, Inc. (Lucky Stores), petitioner conducted its activities through American Stores' wholly owned subsidiaries: American Super Stores, Inc.,

comprised of Acme Markets, Inc., Jewel Food Stores, Star Market and Jewel OSCO; American Food and Drug, Inc., comprised of Skaggs Alpha Beta and Buttrey Food-Drug; American Drug Stores, Inc., a nationwide drug chain; and Alpha Beta Company (Alpha Beta). During the 1989 tax year, American Stores also acquired and commenced operations through Lucky Stores. Lucky Stores operated food stores in California, Arizona, Nevada, and Florida.

Acquisition of Lucky Stores

In December 1987, the second and third largest grocery store chains in the State of California, Vons and Safeway, merged. American Stores determined that acquiring Lucky Stores would complement Alpha Beta's operations in California. On March 21, 1988, American Stores initiated a hostile takeover bid or tender offer for all the outstanding shares of Lucky Stores for $45 per share (tender offer). At the time of the tender offer, Alpha Beta stores constituted California's fourth largest retail grocery chain. Alpha Beta operated 252 supermarkets in California, 54 in northern California, and 198 in southern California. Lucky Stores operated 340 stores located throughout California, and it was the largest grocery store chain in the State of California.

On May 23, 1988, American Stores amended its tender offer increasing the offer to $65 for each Lucky Stores share. This increase in price was attributable, in part, to competing bids by

other companies interested in acquiring Lucky Stores. On May 23, 1988, the board of directors for Lucky Stores approved the amended tender offer and a merger proposal with American Stores.

FTC'S Actions

On March 21, 1988, American Stores gave notice of its intention to purchase all the stock of Lucky Stores to the Federal Trade Commission (FTC), pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L. 94-435, sec. 201, 90 Stat. 1390, codified at 15 U.S.C. sec. 18a (1997). In response to American Stores' Hart-Scott-Rodino filing, the FTC conducted an investigation of the proposed merger and worked to negotiate a settlement with American Stores.

The FTC and American Stores negotiated a preliminary settlement of the FTC's concerns about the tender offer. This preliminary settlement was reflected in two simultaneous actions taken by the FTC on May 31, 1988. First, the FTC filed an administrative complaint charging that American Stores' acquisition of Lucky Stores violated section 7 of the Clayton Act, ch. 323, 38 Stat. 731 (1914), as amended and codified at 15 U.S.C. sec. 18 and section 5 of the Federal Trade Commission Act, ch. 311, 38 Stat. 719 (1914), as amended and codified at 15 U.S.C. sec. 45. Second, the FTC filed a proposed consent order (proposed consent order). As part of the proposed consent order, the tender offer was permitted to proceed subject to certain

conditions. The conditions were contained in an agreement titled "Hold Separate Agreement" (hold separate agreement). That agreement required American Stores to:

> a. refrain from integrating the assets of American Stores and Lucky Stores until American Stores had divested itself of 24 of its 54 Alpha Beta supermarkets in Northern California;
> b. maintain separate books and records for the acquisition;
> c. prevent any waste or deterioration of Lucky Stores' California operations;
> d. refrain from replacing the executives of Lucky Stores;
> e. maintain Lucky Stores as a viable competitor in California;
> f. refrain from selling or otherwise disposing of Lucky Stores' California warehouses, distribution or manufacturing facilities, and retail grocery stores;
> g. preserve separate purchasing for Lucky Stores' retail grocery sales.

Relying on the FTC's proposed consent order of May 31, 1988, American Stores proceeded with its tender offer to purchase 100 percent of Lucky Stores stock. American Stores' tender offer for Lucky Stores stock was carried out by a wholly owned subsidiary of Alpha Beta, Alpha Beta Acquisition Corp. (ABAC). ABAC had been formed solely for the purpose of acquiring the stock of Lucky Stores. On June 2, 1988, ABAC acquired more than 80 percent of the Lucky Stores common stock at $65 per share. As between ABAC and the former Lucky Stores shareholders, ABAC's acceptance and purchase of stock was final and irrevocable.

Petitioner's objective in acquiring Lucky Stores was to achieve future long-term benefits from the merger of the Alpha

Beta chain of stores and Lucky Stores. The long-term benefits being sought were a greater market share in the California grocery market, greater operating efficiencies in the combined operations of the two chains, and the adoption of some of the management/operating policies of Lucky Stores such as Lucky Stores' "everyday low pricing" policy.

On June 9, 1988, ABAC was merged with and into Lucky Stores, pursuant to short-form merger provisions of the Delaware General Corporation Law. As a result of the short-form merger, ABAC disappeared and Lucky Stores became a wholly owned subsidiary of Alpha Beta. The total consideration paid by American Stores in the tender offer and merger exceeded $2.5 billion. For purposes of State law, the merger was final and irrevocable. After its acquisition of Lucky Stores, American Stores complied with the requirements of the hold separate agreement and did not integrate the operations of Lucky Stores with the operations of Alpha Beta.

State of California's Actions

In April 1988, American Stores provided the State of California with the filings it had made with the FTC pursuant to section 7 of the Clayton Act. Through that filing, American Stores gave formal notice to the State of California of its intentions to acquire all of the Lucky Stores stock and to merge ABAC into Lucky Stores.

The FTC allowed, in accordance with its regulations, a comment period during which the public was invited to submit comments on the proposed consent order.  The attorney general of California submitted comments expressing concern that American Stores' acquisition of Lucky Stores would reduce competition in the retail supermarket industry in California.

The FTC entered a final consent order on August 31, 1988. On September 1, 1988, the State of California filed suit against American Stores, ABAC, and Lucky Stores in the United States District Court for the Central District of California (District Court).  The State of California claimed that the merger violated Federal and State antitrust laws by decreasing competition in the supermarket industry in California.  The State of California requested various forms of relief, including rescinding the merger transaction, a divestiture of Lucky Stores or, alternatively, a permanent "hold separate agreement" like the one that American Stores had entered into with the FTC.

The District Court issued a temporary restraining order against American Stores and Lucky Stores on September 29, 1988. The order required the continuation of the hold separate agreement and the maintenance of the status quo at American Stores and its subsidiaries and Lucky Stores and its subsidiaries until a hearing on the preliminary injunction could be held.  The opinion of the District Court in this matter was published as

State of Cal. v. American Stores Co., 697 F. Supp. 1125 (C.D. Cal. 1988). American Stores appealed the decision of the District Court. The Court of Appeals for the Ninth Circuit published its opinion in that appeal as State of Cal. v. American Stores Co., 872 F.2d 837 (9th Cir. 1989). The Court of Appeals affirmed the District Court's finding that California had shown a likelihood of success on the merits of the case and possible irreparable harm. The Court of Appeals, however, found that the preliminary injunction ordered by the District Court was tantamount to an indirect divestiture which was not a remedy available to private plaintiffs under section 16 of the Clayton Act. The United States Supreme Court granted certiorari to the State of California. See California v. American Stores Co., 493 U.S. 916 (1989). Prior to granting certiorari, Justice O'Connor entered a stay continuing the District Court's injunction pending further review by the Supreme Court. See California v. American Stores Co., 495 U.S. 271, 278 (1990).

The Supreme Court reversed the judgment of the Court of Appeals for the Ninth Circuit and remanded the case for further proceedings. The Supreme Court held that divestiture is a form of injunctive relief within the meaning of section 16 of the Clayton Act and that the District Court had the authority to divest the acquirer of any part of the acquirer's ownership interest in the acquired company. See id. The Supreme Court

answered the specific question before it stating:

> We are merely confronted with the naked question whether the District Court had the power to divest American of any part of its ownership interest in the acquired Lucky Stores, either by forbidding the exercise of the owner's normal right to integrate the operations of the two previously separate companies, or by requiring it to sell certain assets located in California.  We hold that such a remedy is a form of "injunctive relief" within the meaning of section 16 of the Clayton Act. * * *  [Id. at 296.]

The Supreme Court remanded the matter for further proceedings. The Court of Appeals for the Ninth Circuit vacated part of its earlier opinion and remanded the case to the District Court.

The preliminary injunction obtained by the State of California was modified on at least four occasions.  A modification filed with the District Court on November 7, 1989, permitted American Stores to integrate specified northern California operations of Alpha Beta with specified northern California operations of Lucky Stores following a stipulated divestiture of specified Alpha Beta assets.  American Stores ultimately settled the dispute with the attorney general of California by entering into a stipulation for entry of consent decree on May 16, 1990 (the California consent decree).  The California consent decree did not require American Stores to divest any of its Lucky Stores stock, and Lucky Stores remains a wholly owned subsidiary of American Stores.  Instead, the California consent decree required American Stores to dispose of approximately 152 of its 175 southern California Alpha Beta

Stores and 9 of its newly acquired southern California Lucky Stores, together with most of the related Alpha Beta support facilities. The California consent decree did not require petitioner to divest any supermarkets in northern California or Nevada beyond those specified in the November 7, 1989, modification.

On June 17, 1991, pursuant to the California consent decree, American Stores sold its stock in Alpha Beta Company for approximately $251 million to Food-4-Less Supermarkets, Inc. At the time of the sale, the assets of Alpha Beta included 145 stores located in southern California. The attorney general of California and the District Court approved this transaction as fulfilling the requirements of the settlement agreement and the California consent decree.

From June 2, 1988, and continuing throughout the course of antitrust litigation with California, Lucky Stores was a member of American Stores' consolidated group. As such, American Stores included Lucky Stores in its consolidated financial statements and consolidated Federal income tax returns. Lucky Stores accounted for $3,697,086,836 of the total American Stores' affiliated group gross revenue of $19,096,763,598 for the 1989 tax year (Lucky Stores was only a member of American Stores' consolidated group during the 1989 tax year for the period from June 2, 1988 to January 28, 1989) and $6,281,249,713 of the total

American Stores' affiliated group gross revenue of $22,450,415,818 for the 1990 tax year.

In the 1989 tax year return, petitioner did not claim an ordinary and necessary business expense deduction for the legal fees attributable to the FTC proceeding involving the acquisition of Lucky Stores. Petitioner incurred approximately $2.6 million in such legal fees in the 1989 tax year. Petitioner also did not deduct investment banking fees incurred in the acquisition of Lucky Stores stock. Instead, petitioner capitalized all of these expenditures as costs incurred in the process of acquiring Lucky Stores.

From June of 1988 until the end of the 1989 tax year, American Stores' subsidiary, Lucky Stores, paid $1,074,867 in legal fees to defend against the claims of the attorney general of California for violations of Federal and State antitrust laws arising from the acquisition of Lucky Stores. American Stores charged these legal fees to account No. 650800/7025, Lucky Acquisition, and moved these expenses to American Food and Drug, Inc. In the financial books and records of American Food and Drug, Inc., for the 1989 tax year, American Stores capitalized the $1,074,867 for legal fees associated with the antitrust litigation with the attorney general of California. Petitioner's accountants prepared a journal entry for these legal fees.

On its consolidated corporation income tax return for the 1989 tax year, petitioner reported on Schedule M-1 a deduction for "LEGAL AND RELATED EXPENSES IN CONNECTION WITH: CA ATTORNEY GENERAL LITIGATION" in the amount of $1,074,867. This deduction is found on the tax return Schedules M-1 and M-2 at the second page of Statement 429 of the 1989 return. The 1989 tax return includes this amount as a Form-1120, U.S. Corporation Income Tax Return, line-26 deduction as detailed on Statement 82 of the return.

During the 1990 tax year, American Stores' subsidiary, Lucky Stores, paid $2,666,045 for legal fees associated with the antitrust litigation with the attorney general of California. American Stores charged these legal fees to account No. 650800/7025, Lucky Acquisition, and moved these expenses to Alpha Beta. American Stores capitalized the $2,666,045 for legal fees on the financial books and records of Alpha Beta for the 1990 tax year. Petitioner's accountants prepared documentation for these legal fees.

On petitioner's corporation income tax return for the 1990 tax year, petitioners claimed a deduction for "LEGAL FEES - CA ATTORNEY GENERAL LITIGATION" in the amount of $2,666,045. The 1990 return includes this amount as a Form-1120, line-26 deduction.

During the 1990 tax year, American Stores' subsidiary, Lucky Stores, paid $175,630 for legal fees associated with the antitrust litigation with the attorney general of California.  Of the $175,630, Lucky Stores paid $95,355 to the law firm of Sonnenschein, Carlin, Nath for legal work on the antitrust case and paid $80,275 for other expenses related to the antitrust case.

On petitioner's corporation income tax return for the 1990 tax year, petitioner claimed a deduction on Form 1120, line 26 for various items including "Litigation Expenses" of $10,706,713. American Stores included the $175,630 for legal fees and costs identified above in the "Litigation Expenses".

For financial reporting purposes, American Stores was required to account for its acquisition of Lucky Stores using the "purchase accounting" method pursuant to Accounting Practices Board Opinion No. 16 ("APB 16").  Under this method, American Stores' acquisition was treated as an acquisition of Lucky Stores' assets.  Lucky Stores' liabilities were treated as if they were assumed by American Stores in this hypothetical asset acquisition.[1]  Under the purchase accounting method, petitioner was required to identify and quantify all of Lucky Stores'

---

[1]On Mar. 13, 1989, American Stores filed a Form 8023, Corporate Qualified Stock Purchase Elections, related to the acquisition by American Stores of Lucky Stores and related entities in the Lucky Stores affiliated group.

liabilities, including liabilities for current and pending litigation. The legal fees associated with Lucky Stores' current and pending litigation were required to be capitalized under the purchase accounting method because they were considered liabilities that American Stores assumed in the hypothetical asset purchase, and as such, the legal fees and other liabilities were treated as additional consideration that American Stores paid for Lucky Stores' assets. In addition to the legal fees related to the State of California's antitrust suit, petitioner also capitalized under the purchase accounting method more than $1 million of Lucky Stores' legal fees incurred in connection with employment discrimination suits, torts, and other litigation. Although petitioner capitalized these legal expenses for financial accounting purposes under the purchase accounting method, petitioner claimed them as ordinary and necessary business expenses on its consolidated Federal income tax returns for the 1989 and 1990 tax years. With the exception of the legal fees incurred in connection with the State of California's antitrust suit, respondent allowed petitioner to deduct for Federal income tax purposes the legal fees related to Lucky Stores that petitioner had capitalized under the purchase accounting method for financial reporting purposes.

In the notice of deficiency, respondent disallowed legal fees incurred by petitioner in defending against the State of

California's antitrust suit.  Respondent disallowed $1,074,867 of deductions for legal fees claimed for the 1989 tax year and disallowed separate deductions of $2,666,045 and $175,630 for legal fees claimed for the 1990 tax year.

## Discussion

The issue for decision is whether legal fees incurred in connection with the State of California's antitrust litigation are deductible as ordinary and necessary business expenses under section 162.[2]  Respondent determined that the legal fees must be capitalized pursuant to section 263(a).  Petitioner argues that the legal fees were postacquisition expenditures incurred in defending its business operations.

Income tax deductions are a matter of legislative grace, and the burden of clearly showing the right to the claimed deduction is on the taxpayer.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Moreover, deductions are strictly construed and allowed only "as there is clear provision therefor."  INDOPCO, Inc. v. Commissioner, supra at 84 (quoting New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934)).

The principal difference between a deduction and an item that must be capitalized and amortized is the timing of the recovery of the expenditure.  The Supreme Court in INDOPCO, Inc.

---

[2]Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the subject years, and Rule references are to the Tax Court Rules of Practice and Procedure.

v. Commissioner, supra at 83-84, explained:

> The primary effect of characterizing a payment as either a business expense or a capital expenditure concerns the timing of the taxpayer's cost recovery: While business expenses are currently deductible, a capital expenditure usually is amortized and depreciated over the life of the relevant asset, or, where no specific asset or useful life can be ascertained, is deducted upon dissolution of the enterprise. * * * Through provisions such as these, the Code endeavors to match expenses with the revenues of the taxable period to which they are properly attributable, thereby resulting in a more accurate calculation of net income for tax purposes. * * *

To qualify as an allowable deduction under section 162(a), an item must (1) be paid or incurred during the taxable year, (2) be for carrying on any trade or business, (3) be an expense, (4) be a necessary expense, and (5) be an ordinary expense. Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971). Respondent argues that the legal fees were neither "ordinary" nor "for carrying on any trade or business" but were expenditures associated with the acquisition of a capital asset.

In one sense, the term "ordinary" in section 162 prevents the deduction of expenses that are not normally incurred in the type of business in which the taxpayer is engaged ("ordinary" in the sense of "normal, usual, or customary" in a taxpayer's trade or business). Deputy v. Du Pont, 308 U.S. 488, 495 (1940). More importantly, the term "ordinary" serves as a means to "clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital

expenditures, which, if deductible at all, must be amortized over the useful life of the asset." Commissioner v. Tellier, 383 U.S. 687, 689-690 (1966).

Expenses incurred in defending a business and its policies from attack are generally ordinary and necessary--and deductible--business expenses. See, e.g., Commissioner v. Heininger, 320 U.S. 467 (1943) (a dentist's mail order business faced ruin when the Postmaster General deprived him of access to the mails; the Supreme Court held that his legal fees, incurred in litigating the propriety of the Postmaster General's order, were properly deductible as ordinary and necessary business expenses); Commissioner v. Tellier, supra (holding that the taxpayer's legal costs "incurred in his defense against charges of past criminal conduct" arising out of his business activities were deductible under section 162). On the other hand, no current deduction is allowed for a capital expenditure. See sec. 263(a); INDOPCO, Inc. v. Commissioner, supra at 83.

A particular cost, no matter what its type, may be deductible in one context but may be required to be capitalized in another context. Simply because other cases have allowed a current deduction for similar expenses in different contexts does not require the same result here. For example, in Commissioner v. Idaho Power Co., 418 U.S. 1, 13 (1974), the Supreme Court made the following observation about wages paid by a taxpayer in its

trade or business:

> Of course, reasonable wages paid in the carrying on of a trade or business qualify as a deduction from gross income. * * * But when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired. * * *

Petitioner's reliance on El Paso Co. v. United States, 694 F.2d 703 (Fed. Cir. 1982), and E.I. du Pont de Nemours & Co. v. United States, 432 F.2d 1052 (3d Cir. 1970), to support the proposition that expenses incurred in an antitrust defense are always deductible is misplaced. As previously indicated, expenditures which otherwise might qualify as currently deductible, must be capitalized if they are incurred "in connection with" the acquisition of a capital asset. Commissioner v. Idaho Power Co., supra at 13. As stated in Ellis Banking Corp. v. Commissioner, 688 F.2d 1376, 1379 (11th Cir. 1982):

> The requirement that costs be capitalized extends beyond the price payable to the seller to include any costs incurred by the buyer in connection with the purchase, such as appraisals of the property or the costs of meeting any conditions of the sale. See, e.g., Woodward v. Commissioner, 1970, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577; United States v. Hilton Hotels Corp., 1970, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585. Further, the Code provides that the requirement of capitalization takes precedence over the allowance of deductions. §§ 161, 261; see generally Commissioner v. Idaho Power Co., 1974, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535. Thus an expenditure that would ordinarily be a deductible expense must nonetheless be capitalized if it is incurred in connection with the acquisition of a capital asset.[6] The function of these rules is to achieve an accurate measure of net income for the year by matching outlays

with the revenues attributable to them and recognizing both during the same taxable year.  When an outlay is connected to the acquisition of an asset with an extended life, it would understate current net income to deduct the outlay immediately.   * * *

[6]We do not use the term "capital asset" in the restricted sense of section 1221.  Instead, we use the term in the accounting sense, to refer to any asset with a useful life extending beyond one year.

Distinguishing between expenses that can be deducted under section 162 and those that must be capitalized under section 263 is not always an easy task.  As the Supreme Court has noted, "the cases sometimes appear difficult to harmonize," and "each case 'turns on its special facts.'"  INDOPCO, Inc. v. Commissioner, supra at 86 (quoting Deputy v. Du Pont, supra at 496).  After considering all the facts and circumstances, we must determine whether the costs incurred in defending the State of California's antitrust litigation are better viewed as costs associated with defending a business or as costs associated with facilitating a capital transaction.  See Woodward v. Commissioner, 397 U.S. 572 (1970).

In Woodward, the Supreme Court rejected a subjective "primary purpose" test in favor of the objective "origin of the claim" test used in United States v. Gilmore, 372 U.S. 39 (1963).  Under the origin of the claim test, the nature of the transaction out of which the expenditure in controversy arose governs whether the item is a deductible expense or a capital expenditure, regardless of the motives of the payor making the payment.  See

Woodward v. Commissioner, supra at 578. In determining whether legal fees paid for business advice and counsel are capital, we look to the nature of the services performed by the adviser rather than the designation or treatment by the taxpayer. See Honodel v. Commissioner, 76 T.C. 351, 365 (1981), affd. 722 F.2d 1462 (9th Cir. 1984); Cagle v. Commissioner, 63 T.C. 86, 96 (1974), affd. 539 F.2d 409 (5th Cir. 1976). Our inquiry focuses on whether the services were performed in the process of defending the business or whether the services were performed in the process of effecting a change in corporate structure for the benefit of future operations. See INDOPCO, Inc. v. Commissioner, 503 U.S. at 89.

In United States v. Hilton Hotels Corp., 397 U.S. 580 (1970), the Supreme Court held that litigation expenses incurred to determine the price of stock, whose title had already passed to the acquiring corporation under State law, were costs that arose out of the acquisition process itself and therefore capital and nondeductible. In Norwest Corp. & Subs. v. Commissioner, 112 T.C. 89 (1999), this Court analyzed a similar question by asking whether the expenses were sufficiently related to the acquisition process and essential to the achievement of the long-term benefits of the acquisition. See id. at 102. In applying the origin of the claim test, courts look beyond the formal characterization of the claim. See Clark Oil & Refining Corp. v.

United States, 473 F.2d 1217 (7th Cir. 1973). All the circumstances surrounding the claim must be considered. See id. at 1220.[3]

The District Court described the State of California's antitrust complaint in the following terms:

> The State requests a preliminary injunction "preventing and restraining [Alpha Beta and Lucky], and all persons acting on their behalf, from taking any action, either directly or indirectly, in furtherance of the proposed acquisition of Lucky, and requiring Alpha Beta to hold and operate separately all of Lucky's California assets and businesses pending final adjudication of the merits of this action; and ... such injunctive relief, including recission ... as is necessary and appropriate to prevent the effect of the unlawful activities alleged." Complaint at 14. Furthermore, the State seeks to "permanently enjoin [Alpha Beta and Lucky] from carrying out any agreement, understanding, or plan, the effect of which would be to combine the supermarket business of [Alpha Beta] and Lucky." * * * [State of Cal. v. American Stores Co., 697 F. Supp. 1125, 1133 (C.D. Cal. 1988).]

The Supreme Court described the complaint in the following terms:

> The State sued, claiming that the merger violates the federal antitrust laws and will harm consumers in 62 California cities. The complaint prayed for a preliminary injunction requiring American to operate the acquired stores separately until the case is decided, and then to divest itself of all of the acquired assets located in California. * * * [California v. American Stores Co., 495 U.S. 271, 274 (1990).]

---

[3]In Brown v. United States, 526 F.2d 135, 139 (6th Cir. 1975), legal expenses paid in settlement of a derivative action were held to be nondeductible capital expenditures. The court found that the origin of the derivative claim was the taxpayer's efforts to acquire the shareholder's stock. The court stated that although conserving the stock's value was the immediate purpose of the derivative action, the test of deductibility relates to the origin rather than the purpose.

The Supreme Court held: "the District Court had the power to divest American of any part of its ownership interests in the acquired Lucky Stores, either by forbidding the exercise of the owner's normal right to integrate the operations of the two previously separate companies, or by requiring it to sell certain assets located in California" under section 16 of the Clayton Act.  Id. at 296.

The claim of the State of California that gave rise to petitioner's legal fees was an alleged violation of section 7 of the Clayton Act.  That section prohibits the acquisition of stock or assets in another company if "the effect of such acquisition may be substantially to lessen competition, or tend to create a monopoly."  15 U.S.C. sec. 18.  The antitrust claim in the instant case involved American Stores' right to acquire Lucky Stores.  The legal fees incurred in the antitrust action arose out of, and were incurred in connection with, petitioner's acquisition of Lucky Stores.

Petitioner places great emphasis on the fact that legal title to all the Lucky Stores shares had passed before the antitrust litigation was commenced.  In United States v. Hilton Hotels Corp., supra at 584, the Supreme Court noted that the prior passage of title in the underlying stock acquisition in question was "a distinction without a difference" in deciding whether costs of litigation arose out of the process of

acquisition. This Court reached a similar result in <u>Berry Petroleum Co. & Subs. v. Commissioner</u>, 104 T.C. 584, 622 (1995), affd. without published opinion 142 F.3d 442 (9th Cir. 1998).

At the time the antitrust legal fees were being incurred, the Supreme Court described the status of the "merger" involved in this case in the following terms: "Thus, as a matter of legal form American and Lucky were merged into a single corporate entity on June 9, 1988, but as a matter of practical fact their business operations have not yet been combined." <u>California v. American Stores Co.</u>, 495 U.S. at 276. On this same point, the District Court noted:

> If the Hold Separate Agreement has meaning, this is <u>not</u> a completed merger. Alpha Beta and Lucky, pursuant to the Hold Separate Agreement, are performing numerous functions as separate entities. They retain their separate names and with them their respective corporate identities. While defendants maintain that it is "verbal calisthenics" to issue injunctive relief to stop a merger contending that such is tantamount to divestiture, they, nevertheless, ask the Court to perform a linguistic triathalon to understand how a Hold Separate Agreement is equivalent to a completed merger. The Court is unable to make such a leap in reasoning. [<u>State of Cal. v. American Stores Co.</u>, 697 F. Supp. at 1134; fn. ref. omitted.]

When the legal fees were incurred, the substance of the merger was not complete, despite the passage of title in the Lucky Stores shares. The hold separate agreement and the subsequent injunction issued by the District Court preserved the status quo that existed prior to the Lucky Stores acquisition by preventing the integration of the two supermarket chains in order

to protect the California consumers from anticompetitive behavior. Until the injunction was lifted, American Stores faced the possibility of divestiture. Petitioner's objective in acquiring Lucky Stores was to achieve future long-term benefits from the merger of the Alpha Beta chain of stores and Lucky Stores. These benefits could not be realized if the State of California's antitrust suit was successful. Although petitioner became the owner of Lucky Stores, it was unable to realize the long-term benefits being sought until the antitrust suit was resolved.

The origin of the State of California's antitrust suit was American Stores' acquisition of Lucky Stores. The expenditure of funds to defend against the antitrust litigation conferred long-term benefits on American Stores. American Stores was not defending an existing business structure from attack; rather it was attempting to establish its right to create such a structure. These benefits are comparable to the benefits that were required to be capitalized in INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992).

We hold that petitioner is not entitled to deduct the legal fees it incurred in contesting the State of California's antitrust suit.

Decision will be

entered under Rule 155.