T.C. Memo. 2011-232


UNITED STATES TAX COURT


GODFREY C. EKWENUGO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 13255-07, 15045-08,    Filed September 28, 2011.
        29169-08.


Godfrey C. Ekwenugo, pro se.

<u>Catherine S. Tyson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In these consolidated cases, respondent determined deficiencies, additions to tax, and accuracy-related penalties with respect to petitioner's Federal income taxes as follows:

| Year | Deficiency | Addition to tax Sec. 6651(a) | Accuracy- related penalty Sec. 6662(a) |
|------|-----------|------------------------------|----------------------------------------|
| 2001 | $33,566 | $7,773 | $6,713 |
| 2002 | 45,352 | 10,697 | 9,070 |
| 2003 | 94,168 | 22,896 | 18,834 |
| 2004 | 36,878 | 8,554 | 7,376 |
| 2005 | 18,217 | 4,099 | -0- |

Respondent also determined a section 6651(a)(2)[1] addition to tax for 2005.[2]  Petitioner timely petitioned this Court to contest respondent's determinations.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary figures have been rounded to the nearest dollar.

[2]Sec. 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on a return by the payment due date. The addition to tax accrues at a rate of 0.5 percent for each month of nonpayment, not to exceed 25 percent in the aggregate. Id.

After concessions,[3] the issues for decision are:  (1)

Whether petitioner had unreported gross receipts of $86,789,

_____

[3]Respondent concedes that the tax compliance officer who performed the bank deposits analysis erroneously included some items in income and that petitioner's unreported income should be reduced by $5,060, $16,155, and $260 for 2001, 2002, and 2003, respectively.  The amounts set forth in (1) above reflect these concessions.

After reviewing the documents introduced into evidence at trial, respondent concedes that petitioner is entitled to Schedule C deductions as follows:

| Year | Per return | Disallowed per notice of deficiency | Total deductions allowed after concessions |
|------|-----------|--------------------------------------|---------------------------------------------|
| 2001 | $17,010 | $15,010 | $10,000 |
| 2002 | 30,356 | 28,668 | 10,000 |
| 2003 | 2,813 | 2,813 | 110,252 |
| 2004 | 2,556 | 2,556 | 31,879 |
| 2005 | No return filed | --- | 10,000 |

Respondent also concedes that petitioner is entitled to three personal exemption deductions for 2001 and 2002 and that petitioner qualifies for head of household filing status for 2001 and 2002.

Petitioner concedes that:  (1) He is liable for the sec. 6651(a)(1) additions to tax for failure to timely file his 2001 to 2005 returns; (2) if this Court determines deficiencies for 2001 to 2004, he is liable for the sec. 6662(a) accuracy-related penalties for those years; and (3) if this Court determines a deficiency for 2005, he is liable for the sec. 6651(a)(2) addition to tax.

The following issues are computational:  (1) Petitioner's eligibility for earned income tax credits for 2001 to 2004; (2) petitioner's standard deductions for 2001 to 2005; (3) petitioner's self-employment tax liabilities for 2001 to 2004; and (4) the availability and extent of petitioner's self-employment tax deductions for 2001 to 2005.

$107,539,[4] $282,862, $125,641, and $82,010 for 2001, 2002, 2003, 2004, and 2005, respectively, as respondent determined using the bank deposits method; and (2) whether petitioner substantiated Schedule C deductions for 2001 to 2005 in excess of the amounts respondent concedes.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulations of fact are incorporated herein by this reference. Petitioner resided in Missouri when he filed his petitions.

## I.   Petitioner's Background and Businesses

Petitioner emigrated from Nigeria to the United States in 1981. He became a U.S. citizen in 1990. Petitioner attended Fontbonne University in St. Louis, Missouri, receiving a bachelor of science degree in 1989 and a master's degree in business administration in 1990.

Sometime in the 1990s petitioner started driving a cab for the Harris Cab Co., and he continued driving for the company through 2002.[5] For a period that is not established in the record, petitioner also operated a business called Comfort

---

[4]Respondent's opening brief incorrectly shows the total gross receipts for 2002 after concessions as $60,566.

[5]The parties stipulated that petitioner drove a cab during 2001 and 2002, but petitioner testified that he stopped driving a cab in 2001.

Limousine. From 2001 to 2005 petitioner also operated a tax return preparation business.

In 2002 petitioner opened a nightclub called Comfort Zone, which he operated through 2004. The primary source of income for Comfort Zone was liquor sales. From 2002 to 2005 petitioner also operated an establishment known as the Royal Crown.

During all or part of the years at issue, petitioner maintained three accounts at the St. Louis Postal Credit Union. From 2001 to 2005 petitioner maintained an account with an account number ending in 6671 (account 6671). On the member account agreement, petitioner represented that he was the sole owner of the account and identified the account as both an individual and a business account. Petitioner listed his occupation as self-employed accountant.

From 2001 to 2005 petitioner also maintained an account with an account number ending in 8886 (account 8886). On the member account agreement, petitioner represented that he was the sole owner of the account and identified the account as an individual account. Petitioner listed his occupation as self-employed accountant.

On July 31, 2002, petitioner opened an account with an account number ending in 3842 (account 3842). On the account agreement, petitioner listed Comfort Zone as the member and himself as a joint member and identified the account as a

business account.  Petitioner listed his occupation as self-employed.

Respondent determined that petitioner made taxable deposits into the three accounts as follows:

| Year | Account 6671 | Account 8886 | Account 3842 | Total |
|------|------|------|------|------|
| 2001 | $87,006 | $4,843 | -0- | $91,849 |
| 2002 | 62,721 | 1,295 | $59,678 | 123,694 |
| 2003 | 5,017 | 50 | 278,055 | 283,122 |
| 2004 | -0- | -0- | 125,641 | 125,641 |
| 2005 | -0- | 450 | 81,560 | 82,010 |

## II.  Petitioner's Returns and Notices of Deficiency

Petitioner untimely filed his Federal income tax return for 2001.  On the Schedule C, Profit or Loss From Business (Sole Proprietorship), petitioner reported total gross income of $27,856 and claimed deductions totaling $17,010 as follows:  (1) $159 for taxes and licenses; (2) $5,571 for commissions and fees; (3) $3,780 for gas; and (4) a $7,500 payment to Harris Cab Co. Petitioner identified the relevant business activity as "taxicab service".

Respondent issued a notice of deficiency dated March 9, 2007, for 2001.  On the basis of petitioner's bank deposits, respondent determined that petitioner failed to report gross receipts of $63,993.  Respondent also disallowed $15,010 of petitioner's Schedule C deductions.

Petitioner untimely filed his Federal income tax return for 2002.  On the Schedule C, petitioner reported total gross income

of $41,450 and claimed deductions totaling $30,356 as follows: (1) $12,000 for rent or lease of business property; (2) $1,932 for repairs and maintenance; (3) $10,551 for supplies; (4) $585 for taxes and licenses; (5) $2,856 for utilities; (6) $232 of depreciation; (7) $1,850 for advertising; and (8) $350 for legal and professional services. Petitioner identified the related business activity as Comfort Zone.

Respondent issued a notice of deficiency dated March 18, 2008, for 2002. On the basis of petitioner's bank deposits, respondent determined that petitioner failed to report gross receipts of $82,244. Respondent also disallowed $28,668 of petitioner's Schedule C deductions.

Petitioner untimely filed his Federal income tax returns for 2003 and 2004 and failed to file a Federal income tax return for 2005. On his Schedule C for 2003, petitioner reported total gross income of $14,555 and claimed deductions totaling $2,813 as follows: (1) $1,668 for utilities; (2) $65 for advertising; and (3) $1,080 for office expenses. On his Schedule C for 2004, petitioner reported total gross income of $15,115 and claimed deductions totaling $2,556 as follows: (1) $1,188 for utilities; (2) $1,008 for office expenses; and (3) $360 for Internet services. Respondent prepared a substitute for return for 2005 pursuant to section 6020(b).

Respondent issued a notice of deficiency dated August 26, 2008, for 2003 to 2005. On the basis of petitioner's bank deposits, respondent determined that petitioner failed to report gross receipts of $268,567, $110,526, and $82,010 for 2003, 2004, and 2005, respectively. Respondent also disallowed petitioner's Schedule C deductions of $2,813 and $2,556 for 2003 and 2004, respectively.

OPINION

I. Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden of proof shifts to the Commissioner, however, if the taxpayer produces credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[6] with regard to all reasonable requests for information. Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

---

[6]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

Petitioner does not contend that section 7491(a)(1) applies, and the record does not permit us to conclude that petitioner satisfied the section 7491(a)(2) requirements. Accordingly, petitioner bears the burden of proving that the Commissioner's determinations are erroneous.

II. Petitioner's Income for 2001 to 2005

A. In General

Gross income includes "all income from whatever source derived". Sec. 61(a). A taxpayer must maintain books and records establishing the amount of his or her gross income. Sec. 6001. If a taxpayer fails to maintain the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, supra at 687.

The bank deposits method is a permissible method of reconstructing income. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see also Dodge v. Commissioner, 981 F.2d 350, 353 (8th Cir. 1992), affg. in part and revg. in part 96 T.C. 172 (1991). Bank deposits constitute prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The Commissioner need not show the likely source of a deposit treated

as income, but the Commissioner "must take into account any nontaxable source or deductible expense of which it has knowledge" in reconstructing income using the bank deposits method. Clayton v. Commissioner, supra at 645-646. However, the Commissioner need not follow any "leads" suggesting that a taxpayer has deductible expenses. DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable. See Clayton v. Commissioner, supra at 645. However, merely establishing that some deposits are not taxable is insufficient to demonstrate that the Commissioner acted arbitrarily in reconstructing income. Estate of Mason v. Commissioner, 64 T.C. 651, 658 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

Respondent introduced credible evidence that petitioner did not maintain the required books and records with respect to his income and that petitioner had unreported income for 2001 to 2005. The parties stipulated that during the years at issue petitioner operated a taxicab service, owned and operated a nightclub, prepared tax returns for compensation, and maintained three bank accounts into which he deposited funds. We find that

respondent acted reasonably in using an indirect method to reconstruct petitioner's income.

B.    Returned Checks

In determining income under the bank deposits method, the Commissioner must take into account any nontaxable items of which the Commissioner has knowledge.  Clayton v. Commissioner, supra at 645-646.  Nontaxable items include interaccount transfers and returned checks.  See MacGregor v. Commissioner, T.C. Memo. 2010-187; Taylor v. Commissioner, T.C. Memo. 2009-235.

Respondent's revenue agent, Mike Murphy (Mr. Murphy), performed the bank deposits analysis.  Mr. Murphy testified that he identified deposits in petitioner's accounts, then subtracted any deposits that constituted nontaxable income.  He determined that the resulting amount minus petitioner's reported gross income constituted unreported gross income.

During his testimony Mr. Murphy admitted that he erroneously included in income some deposited checks that later were returned.  On brief respondent conceded that Mr. Murphy erroneously included in his income reconstruction for 2001 to 2005 deposited checks totaling $21,475 that were later returned.

In addition to the items conceded above, an analysis of Mr. Murphy's income reconstruction and petitioner's bank statements reveals that respondent erroneously included additional returned checks in calculating petitioner's unreported income as follows:

- Respondent failed to exclude a returned check for $20 deposited in account 6671 in 2001. We will reduce petitioner's 2001 unreported income accordingly.

- Respondent failed to exclude three returned checks totaling $2,800 deposited in account 3842 in 2003. In addition, respondent failed to adjust his reconstruction to exclude a bank error correction of $200 in account 3842 in 2003. We will reduce petitioner's 2003 unreported income by $3,000 to adjust for these errors.

- Respondent failed to exclude three returned checks totaling $535 deposited in account 3842 in 2004, and we will reduce petitioner's 2004 unreported income accordingly.

- Respondent failed to exclude three returned checks totaling $350 deposited in account 3842 in 2005, and we will reduce petitioner's 2005 unreported income accordingly.

C.  Disputed Items of Income

Petitioner argues that respondent's income reconstruction treated other nontaxable deposits as income. In defending against the Commissioner's reconstruction of income, the taxpayer bears the burden of showing whether and to what extent the Commissioner included deposits derived from nontaxable sources.

Dodge v. Commissioner, supra at 357.  A taxpayer's unsubstantiated and self-serving testimony that deposits are nontaxable transfers between family members and friends ordinarily is insufficient to meet this burden.  See Shea v. Commissioner, 112 T.C. 183, 189 (1999); see also Balot v. Commissioner, T.C. Memo. 2001-73; Ahmad v. Commissioner, T.C. Memo. 1997-85.  If a taxpayer contends that some deposits are nontaxable transfers from family members or friends, the taxpayer should normally introduce credible evidence, such as documents or the testimony of the family members or friends who participated in the alleged transfers, to prove that specific deposits are nontaxable.  See Balot v. Commissioner, supra; see also Ihlenfeldt v. Commissioner, T.C. Memo. 2001-259.  If a taxpayer fails to produce relevant documentation or to call relevant witnesses and fails to explain the absence of such evidence, we may infer that the evidence would have been unfavorable.  See Tokarski v. Commissioner, 87 T.C. at 77.

Petitioner testified that his friends and family members used his personal accounts to deposit their funds.  Petitioner explained that his family imported and exported goods between the United States, Africa, and Europe and deposited income from these sales into his bank accounts.  Petitioner asserts that he either repaid these amounts to his family members or used the funds to purchase products for his family to sell in Africa.  To

corroborate his testimony, petitioner introduced handwritten spreadsheets that purported to identify the source and purpose of some deposits. Petitioner did not introduce any other evidence to corroborate his testimony.

Petitioner also testified that a number of deposits in 2002 represented borrowed money and credit card advances that petitioner used to start Comfort Zone. Petitioner produced a loan application from Larry's Loan Co. The loan application indicates that petitioner requested a $20,000 loan for the purchase of investment property. However, petitioner introduced no documentation to prove that the loan actually closed or that he deposited the loan proceeds into one of his three accounts.

Petitioner also testified that in 2004 Charles Code (Mr. Code) began operating Comfort Zone after petitioner ceased operating it and that a number of deposits were Mr. Code's income. Petitioner testified that he assisted Mr. Code in operating Comfort Zone and that all proceeds from credit card transactions at Comfort Zone were deposited into petitioner's account 3842. Petitioner testified further that he repaid these deposits in two ways: (1) Petitioner wrote Mr. Code checks repaying the amounts; and (2) petitioner used the proceeds to pay rent for Comfort Zone.

Petitioner did not introduce any credible evidence to support his self-serving testimony, such as documentation

concerning the lease agreement, the lease payments, or the alleged credit card transactions.  Petitioner did not call Mr. Code as a witness.

Petitioner also testified that several deposits related to an automobile insurance policy that he purchased for a friend, Fadida Hill (Ms. Hill).  According to petitioner, several deposits constituted payments from Ms. Hill to reimburse him for the insurance.[7]  Petitioner did not produce the insurance policy or call Ms. Hill as a witness.

Petitioner also testified that he received payments of $8,063 and $1,317 in 2001 from Farmers Insurance.  Petitioner claimed that these payments derived from an insurance claim for storm damage to his house.  Petitioner failed to introduce any documentation to support his testimony, and we could not identify specific deposits in 2001 from Farmers Insurance on the account statements in the record.

Petitioner offered several excuses for his failure to introduce appropriate documentation in support of his contentions.  For example, petitioner testified that when he defaulted on the Comfort Zone lease, he no longer had access to

---

[7]In addition, petitioner testified that a number of deposits in accounts 8886 and 6671 were deposits for his children. Petitioner provided no explanation as to the source of these deposits or why these deposits would constitute nontaxable income.

the income records that were inside the club.  He also testified that he lost all records of his tax return preparation business.

In the absence of corroborating evidence, we are not required to accept petitioner's self-serving testimony.  See <u>Shea v. Commissioner</u>, <u>supra</u> at 189.  Petitioner introduced no documentation to corroborate his testimony and did not call any of the material witnesses.  We reject petitioner's uncorroborated testimony as not credible.  Therefore, we sustain respondent's determination that petitioner had unreported gross receipts for 2001 to 2005 adjusted to reflect respondent's concessions and our findings regarding the returned checks.

## III. Schedule C Deductions

Generally, a taxpayer is entitled to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business.  Sec. 162(a); <u>Am. Stores Co. v. Commissioner</u>, 114 T.C. 458, 468 (2000).  An expense is ordinary if it is customary or usual within the particular trade, business, or industry or if it relates to a transaction "of common or frequent occurrence in the type of business involved."  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  <u>Commissioner v. Heininger</u>, 320 U.S. 467, 471 (1943).  Personal, living, or family expenses generally are not deductible.  See sec. 262(a).

Deductions are a matter of legislative grace, and ordinarily a taxpayer must prove that he is entitled to the deductions he claims. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must maintain records to substantiate claimed deductions and to establish the taxpayer's correct tax liability. Higbee v. Commissioner, 116 T.C. at 440; see also sec. 6001. The taxpayer must produce such records upon the Secretary's request. Sec. 7602(a); see also sec. 1.6001-1(e), Income Tax Regs. Adequate substantiation must establish the nature, amount, and purpose of a claimed deduction. Higbee v. Commissioner, supra at 440; see also Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). In deciding whether a taxpayer adequately substantiated a claimed deduction, we are not required to accept the taxpayer's "self-serving, unverified, and undocumented testimony." Shea v. Commissioner, 112 T.C. at 189.

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount of the deductible expense. Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir. 1930). However, we cannot estimate the amount unless the taxpayer introduces evidence that he paid or incurred the expense and the evidence is sufficient for us to develop a reasonable estimate. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount, we bear heavily upon the taxpayer who

failed to maintain and produce the required records.  See <u>Cohan</u> <u>v. Commissioner</u>, <u>supra</u> at 544.

Petitioner argues that he properly deducted business expenses for the years at issue, and he testified about some of the alleged expenses at trial.  However, petitioner concedes that he did not maintain any accounting ledgers or journals for his business activities, and he did not introduce any receipts, invoices, bills, canceled checks, or other items to prove he paid the expenses he deducted.[8]  Petitioner conceded at trial that his 2002 return was "completely unreliable" because it understated income and expenses.

Petitioner did not introduce any documentation or other credible evidence to substantiate Schedule C expenses in excess of those respondent conceded or to provide any reasonable basis for estimating the expenses.  Petitioner's uncorroborated testimony is insufficient to substantiate the disallowed deductions in excess of amounts respondent conceded.  See <u>id.</u> at 542-545.  Therefore, we sustain respondent's determinations as modified by concessions.

_____

[8]Petitioner also testified that he could not produce receipts because Mr. Murphy failed to return relevant receipts to him.  Mr. Murphy testified that petitioner did not provide any documentation to respondent during the audit process.  He further testified that while petitioner provided some receipts for a related audit, he thought the receipts documented only 2005 expenses.  Mr. Murphy testified that he returned the receipts to petitioner's bookkeeper, Ms. Maxie, who was the subject of the related audit.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.