T.C. Memo. 2013-155

UNITED STATES TAX COURT

LORI R. LAMB, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

GARY E. LAMB, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16905-11, 20996-11.        Filed June 20, 2013.

<u>Frederick J. O'Laughlin</u>, for petitioners.

<u>Jamie M. Stipek</u> and <u>H. Elizabeth H. Downs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  These cases are consolidated for purposes of trial and
opinion.  The cases involve the 2008 Federal income tax of Lori R. Lamb and
Gary E. Lamb, a married couple.  In a notice of deficiency issued to Mrs. Lamb on

[*2] April 11, 2011, respondent determined a deficiency in her 2008 Federal income tax of $10,700 and additions to tax under section 6651(a)(1) and (2)[1] of $772 and $378, respectively. In a notice of deficiency issued to Mr. Lamb on June 6, 2011, respondent determined a deficiency in his 2008 Federal income tax of $17,986 and additions to tax under sections 6651(a)(1) and (2) and 6654(a) of $4,047, $2,068, and $578, respectively.

After concessions,[2] the issues for decision are: (1) whether Mr. Lamb received unreported nonemployee compensation; (2) whether petitioners received additional income attributable to unreported cash withdrawals from their business bank accounts; (3) whether petitioners are entitled to various deductions claimed on their untimely filed 2008 return; (4) whether petitioners are liable for additions

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[2]Petitioners concede that they are liable for the gambling income as determined by respondent, and Mrs. Lamb concedes that she is liable for the wage income as determined by respondent. Respondent concedes that petitioners are entitled to a joint filing status and are each entitled to claim a $3,500 personal exemption deduction for 2008. Respondent also concedes that petitioners are entitled to the child tax credit, withholding credits, and rebate recovery credits claimed on their untimely filed return, as well as deductions for the home mortgage interest and State income tax withholding claimed on an attached Schedule A, Itemized Deductions.

[*3] to tax under section 6651(a)(1) and (2); and (5) whether Mr. Lamb is liable for an addition to tax under section 6654(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts is incorporated herein by this reference.  Petitioners resided in Oklahoma at the time they filed their petitions.

I.    Background

A.    Petitioners' Business Activities

Mrs. Lamb is a registered nurse.  During 2008 she received wages of $61,046 from Midwest Regional Medical Center, LLC.

Mr. Lamb works in the residential construction industry.  Mr. Lamb provides new home construction services through his business, Gary Lamb Construction, LLC (Gary Lamb Construction).  He also provides framing services through Express Framing, a subsidiary business of Gary Lamb Construction.

For 2008 respondent received a number of information returns with respect to Mr. Lamb, including the following:  (1) a Form 1099-MISC, Miscellaneous Income, from Willie Lambs Construction (WLC)[3] reporting nonemployee compensation of $32,688; (2) a Form 1099-MISC from Wholesale Granite

---

[3]WLC is a business owned and operated by Mr. Lamb's brother.

[*4] Countertops reporting nonemployee compensation of $4,272; and (3) a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., from Gary Lamb Construction.[4]

B.     Petitioners' Bank Accounts

During 2008 petitioners maintained two accounts at First National Bank: (1) an account (account No. 6821) titled "Gary Lamb Construction LLC"; and (2) an account (account No. 9194) titled "Lori R Lamb DBA Express Framing and Custom Home Building".  Petitioners also maintained a personal bank account. Both petitioners had access to all three accounts.

C.     Petitioners' Gambling Activities

In addition to their business activities, during 2008 petitioners spent a significant amount of time gambling at casinos in Oklahoma, including Sac & Fox Casino, Kickapoo Casino, and Chickasaw Nation Casino.  To fund their gambling activities, petitioners made cash withdrawals from automatic teller machines (ATMs) at the casinos from their two business bank accounts as follows:  (1) petitioners withdrew $23,317 from account No. 6821; and (2) petitioners withdrew $163 from account No. 9194.  Petitioners did not keep any written records with respect to their gambling activities.

---

[4]Neither petitioners nor respondent introduced a copy of the Schedule K-1.

**[\*5]**  During 2008 Mrs. Lamb received gambling income of $5,350 from Sac & Fox Casino.  During 2008 Mr. Lamb received gambling income as follows:  (1) $6,880 from Sac & Fox Casino; (2) $31,964 from Kickapoo Casino; and (3) $1,440 from Chickasaw Nation Casino.

## II.    Petitioners' Tax Reporting and the Notices of Deficiency

Petitioners failed to timely file Federal income tax returns for 2008. Respondent subsequently prepared substitutes for returns for petitioners under section 6020(b).

On April 11, 2011, respondent issued to Mrs. Lamb a notice of deficiency for 2008.  Respondent determined that Mrs. Lamb failed to report wages of $61,046 and gambling winnings of $5,350.  Respondent also determined that she was liable for additions to tax under section 6651(a)(1) and (2).

On June 6, 2011, respondent issued to Mr. Lamb a notice of deficiency for 2008.  Respondent determined that Mr. Lamb failed to report gambling income of $40,284 and self-employment income of $36,960.  Respondent also determined that he was liable for additions to tax under sections 6651(a)(1) and (2) and 6654(a).

**[*6]** III.   Petitioners' Tax Court Proceedings

After petitioners received the notices of deficiency Frederick J. O'Laughlin filed a petition with this Court on behalf of each petitioner. By notices dated May 10, 2012, the Court set each of petitioners' cases for trial during the Court's October 15, 2012, Oklahoma City, Oklahoma, trial session and mailed to each of them and Mr. O'Laughlin a notice setting case for trial and a standing pretrial order. The standing pretrial order required the parties, among other things, to exchange documents and other data that the parties intended to use at trial not less than 14 days before the first day of the trial session, to stipulate facts to the maximum extent possible, and to prepare a pretrial memorandum and submit it to the Court and the opposing party not less than 14 days before the first day of the trial session.

On October 12, 2012, petitioners filed a joint Form 1040, U.S. Individual Income Tax Return, for 2008. Mr. O'Laughlin prepared petitioners' return. On the Form 1040 petitioners reported wages of $61,047 and gambling income of $45,634. On an attached Schedule A petitioners claimed deductions for State income tax, real estate taxes, and home mortgage interest, as well as a gambling loss of $45,634. Petitioners also attached a Schedule C, Profit or Loss From Business, for Gene's Muffler, on which they claimed a net loss of $2,029. On an

[*7] attached Schedule E, Supplemental Income and Loss, petitioners reported net income from rental property of $331 and a nonpassive loss from Gary Lamb Construction of $5,759. On an attached statement petitioners acknowledged that Mr. Lamb received Forms 1099-MISC from WLC and Wholesale Granite Countertops but indicated that Mr. Lamb did not report the nonemployee compensation on petitioners' return because the income was received and reported by Gary Lamb Construction.

Despite the Court's standing pretrial order and multiple requests from respondent's counsel, Mr. O'Laughlin did not submit to respondent's counsel copies of documents petitioners intended to use at trial by the document exchange deadline, October 1, 2012. On October 12, 2012, Mr. O'Laughlin attempted to untimely provide to respondent's counsel supporting documentation with respect to petitioners' claimed deductions. Although petitioners had filed a 2008 joint return on October 12, 2012, Mr. O'Laughlin did not provide respondent's counsel with a copy of that return before trial. Mr. O'Laughlin also failed to prepare and submit to the Court and respondent's counsel a pretrial memorandum for either of petitioners' cases as required by the Court's standing pretrial order.

On October 15, 2012, the Court called these cases from the calendar and held a pretrial conference. During the pretrial conference the Court questioned

[*8] Mr. O'Laughlin regarding his failure to comply with the Court's standing pretrial order. Mr. O'Laughlin represented that he was unable to provide pretrial memoranda to the Court because of his caseload. He further represented that petitioners failed to timely provide him all of the relevant documentation. Mr. O'Laughlin also asserted that he was not required to provide the documentation because respondent's paralegal, rather than respondent's counsel, made the request for the documentation.

By order dated October 15, 2012, the Court consolidated these cases for purposes of trial, briefing, and opinion. The Court held a trial in these cases on October 16, 2012. At the conclusion of the trial the Court ordered petitioners to produce to respondent within 30 days: (1) documentation to substantiate the amounts reported on their purportedly filed 2008 return, including the income and expenses claimed on their Schedule C and Schedule E; (2) copies of petitioners' bank account statements annotated to direct respondent to any withdrawals that related to gambling expenses; and (3) a copy of the 2008 return for Gary Lamb Construction as well as related books and records. The Court ordered respondent to verify whether petitioners had filed their 2008 return. The Court also ordered the parties to file a joint status report by December 14, 2012.

[*9]   On December 13, 2012, respondent filed a status report.  In the status report respondent's counsel represented that petitioners had filed a signed return for 2008 on October 12, 2012.  Respondent's counsel also represented that:  (1) Gary Lamb Construction had filed a return for 2008; (2) the filed return showed zeroes on every line; and (3) although Gary Lamb Construction later filed an amended return, respondent's counsel was unable to obtain a copy of the amended return.  Finally, respondent's counsel represented that neither petitioners nor Mr. O'Laughlin had attempted to provide any of the requested documentation and that Mr. O'Laughlin had refused to communicate with respondent's counsel or participate in a conference call with respondent's counsel and the Court.  Petitioners failed to file a status report.

On January 7, 2013, respondent filed a motion for leave to amend answers to conform pleadings to the evidence, pursuant to Rule 41, and the Court lodged the amendments to the answers.  In the motion respondent requested leave to amend the answers to assert that petitioners received unreported taxable income when they withdrew cash from their business accounts to use for personal gambling purposes.  By order dated January 11, 2013, this Court ordered petitioners to file a response to respondent's motion on or before January 31, 2013.  Petitioners failed to do so.  Accordingly, by order dated February 13, 2013,

**[*10]** the Court granted respondent's motion and ordered that respondent's amendments to answers be filed.

OPINION

I.      Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden of proof shifts to the Commissioner, however, if the taxpayer produces credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[5] with regard to all reasonable requests for information. Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). In addition, if the Commissioner raises a new issue or seeks an increase in the deficiency, the Commissioner has the burden of proof as to the new issue or the increased deficiency. See Rule 142(a)(1).

---

[5]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

[*11] Petitioners do not contend that section 7491(a)(1) applies, and the record establishes that they did not satisfy the section 7491(a)(2) requirements. Consequently, petitioners bear the burden of proof as to any disputed factual issues, except with respect to the new issue asserted in respondent's amendments to answer. See Rule 142(a). Under Rule 142(a)(1), respondent bears the burden of proof with respect to the issue of whether petitioners received additional unreported taxable income when they withdrew cash from their business bank accounts to use for personal gambling purposes.

Under section 6201(d), if a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative evidence, in addition to the information return, concerning the deficiency attributable to the income item. At trial Mr. Lamb disputed that he personally received nonemployee compensation from Wholesale Granite Countertops and WLC during 2008. Mr. Lamb admitted, however, that he performed services for and received payment from those two companies. He also admitted that his Social Security number appeared on both of the Forms 1099-MISC.

**[*12]** Petitioners have not raised any reasonable dispute with respect to the accuracy of the information returns. Accordingly, the burden of production with respect to the income did not shift to respondent under section 6201(d).

II.     Unreported Income

Section 61(a) defines gross income as "all income from whatever source derived" and includes compensation paid for services, whether furnished by the taxpayer as an employee, a self-employed person, or an independent contractor. A taxpayer must maintain books and records establishing the amount of his or her gross income. Sec. 6001. If a taxpayer fails to maintain the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

The Commissioner has great latitude in reconstructing a taxpayer's income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 687, 693. The Commissioner may reconstruct a taxpayer's income using third-party information returns. See Parker v. Commissioner, 117 F.3d 785 (5th Cir. 1997); Ketler v. Commissioner, T.C. Memo. 1999-68. The Commissioner also may use bank

[*13] records and other third-party records to reconstruct a taxpayer's income. See Parkinson v. Commissioner, 647 F.2d 875, 876 (9th Cir. 1981), aff'g T.C. Memo. 1979-319; see also Williams v. Commissioner, 999 F.2d 760, 764 (4th Cir. 1993), aff'g T.C. Memo. 1992-153.

As noted above, the Commissioner's deficiency determination normally is entitled to a presumption of correctness. See Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir. 1991), aff'g T.C. Memo. 1989-552. However, when a case involves unreported income and is appealable to the U.S. Court of Appeals for the 10th Circuit, as these cases appear to be absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the determination is supported by some reasonable foundation, such as evidence linking the taxpayer to an income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or evidence that the taxpayer owned liquid assets, see Erickson v. Commissioner, 937 F.2d at 1551-1552. Once the Commissioner produces such evidence, the burden shifts to the taxpayer to rebut the presumption by establishing that the Commissioner's determination is arbitrary or erroneous. See Ruidoso Racing Ass'n, Inc. v. Commissioner, 476 F.2d 502, 507-508 (10th Cir. 1973), aff'g in part, remanding in part T.C. Memo. 1971-194.

**[*14]** Petitioners admitted that they had gambling income in 2008 but that they did not keep any records of their gambling activity. Mr. Lamb also admitted that he provided services to third-party payors for compensation. Although Mr. Lamb claimed that he maintained records for Gary Lamb Construction and that the income in question belonged to Gary Lamb Construction, he did not introduce those records or make any attempt to reconstruct those records.

Because the record establishes that petitioners were engaged in income-producing activities during 2008, respondent's determinations of unreported income in the notices of deficiency are entitled to a presumption of correctness. We also find that, because the record contains no evidence that petitioners maintained books and records to establish the amounts of their income, respondent acted reasonably in reconstructing petitioners' income. We address each disputed income item in turn.

A.  Unreported Nonemployee Compensation

Respondent introduced a copy of Mr. Lamb's account transcript showing that respondent received the Forms 1099-MISC from Wholesale Granite Countertops and WLC showing payment of nonemployee compensation to Mr. Lamb during 2008. Mr. Lamb testified that during 2008 he provided services to Wholesale Granite Countertops and WLC and that he subsequently received the

[*15] Forms 1099-MISC from both businesses. However, he contends that the income reported on the Forms 1099-MISC was income of Gary Lamb Construction rather than his personal income.

Mr. Lamb testified that the Forms 1099-MISC erroneously were issued to him and that the Forms 1099-MISC should have been issued to Gary Lamb Construction, the entity that purportedly received the income. Mr. Lamb further testified that Gary Lamb Construction had filed returns for previous years and that he did not know whether Gary Lamb Construction had filed a return for 2008 but that he believed that Gary Lamb Construction had filed an amended return for 2008. However, Mr. Lamb also testified that Gary Lamb Construction reported the income shown on the Forms 1099-MISC on its return for 2008.

Although petitioners introduced copies of their bank account statements for their business bank accounts, the bank account statements do not show any deposits that match the amounts reported on the Forms 1099-MISC. Petitioners' bank account records do not include copies of the checks deposited into either account. Petitioners did not introduce copies of their personal bank account statements for 2008.

Despite the Court's instructions at the conclusion of trial, petitioners failed to provide to respondent's counsel a copy of the 2008 return for Gary Lamb

[*16] Construction, the Schedule K-1 issued to Mr. Lamb, or any books and records relating to Gary Lamb Construction. In addition, petitioners offered no explanation as to why both Wholesale Granite Countertops and WLC issued Forms 1099-MISC to Mr. Lamb individually rather than to Gary Lamb Construction. Petitioners have failed to prove that the nonemployee compensation reported on the Forms 1099-MISC was taxable income of Gary Lamb Construction and that Gary Lamb Construction reported that compensation as income on its 2008 return. Accordingly, petitioners must include in income the amounts reported on the Forms 1099-MISC. See, e.g., Zaklama v. Commissioner, T.C. Memo. 2012-346, at *59-*60; Brodsky v. Commissioner, T.C. Memo. 2001-240, slip op. at 106-116.

B.     Additional Income From Gary Lamb Construction

In the amendments to answers, respondent asserts that petitioners received additional income attributable to ATM cash withdrawals from their business bank accounts. Respondent further asserts that petitioners used the cash for personal gambling purposes. Under Rule 142(a)(1), respondent bears the burden of proof with respect to the issue of whether petitioners received additional unreported taxable income when they withdrew cash from their business bank accounts to use for personal gambling purposes.

**[*17]** Although petitioners both testified that they regularly withdrew cash from the business bank accounts for personal gambling purposes, respondent has failed to show that these withdrawals constituted taxable income to them. Respondent failed to introduce any evidence regarding the financial status of Gary Lamb Construction or whether Gary Lamb Construction earned any taxable business income during the year in issue. More importantly, respondent failed to introduce any evidence to show that the withdrawals represented taxable income to petitioners during the year in issue, rather than, for example, a nontaxable return of capital or a loan repayment. Accordingly, we are unable to find that petitioners received additional unreported taxable income attributable to their cash withdrawals from the business bank accounts during the year in issue.

III.   Petitioners' Claimed Deductions

Deductions are a matter of legislative grace, and ordinarily a taxpayer must prove that he is entitled to the deductions he claims. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must maintain records to substantiate claimed deductions and to establish the taxpayer's correct tax liability. Higbee v. Commissioner, 116 T.C. at 440; see also sec. 6001. The taxpayer must produce such records upon the Secretary's request. Sec. 7602(a); see also sec. 1.6001-1(e), Income Tax Regs. Adequate substantiation must establish the nature,

**[*18]** amount, and purpose of a claimed deduction. Higbee v. Commissioner, 116

T.C. at 440; see also Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd

per curiam, 540 F.2d 821 (5th Cir. 1976). In deciding whether a taxpayer

adequately substantiated a claimed deduction, we are not required to accept the

taxpayer's "self-serving, unverified, and undocumented testimony." Shea v.

Commissioner, 112 T.C. 183, 189 (1999).

When a taxpayer establishes that he paid or incurred a deductible expense

but does not establish the amount of the expense, we may estimate the amount of

the deductible expense. Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir.

1930). However, we cannot estimate the amount unless the taxpayer introduces

evidence that he paid or incurred the expense and the evidence is sufficient for us

to develop a reasonable estimate. Williams v. United States, 245 F.2d 559, 560

(5th Cir. 1957). In estimating the amount, we bear heavily upon the taxpayer who

failed to maintain and produce the required records. See Cohan v. Commissioner,

39 F.2d at 544.

A. Schedule A Deductions

The only itemized deduction remaining at issue is petitioners' claimed

deduction of $45,634 attributable to their gambling losses. A taxpayer in the trade

or business of gambling may deduct wagering losses as ordinary and necessary

[*19] business expenses.  See secs. 62, 162(a); Calvao v. Commissioner, T.C. Memo. 2007-57.  A taxpayer who is not in the trade or business of gambling may deduct wagering losses as an itemized deduction.  See sec. 165(d); Jackson v. Commissioner, T.C. Memo. 2007-373.  In either instance, "[l]osses from wagering transactions shall be allowed only to the extent of the gains from such transactions."  Sec. 165(d).  Whether a taxpayer has sustained gambling losses and the amount thereof is a question of fact to be resolved upon consideration of the taxpayer's evidence and credibility.  Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390; see also Szkircsak v. Commissioner, T.C. Memo. 1980-129 (noting that the Court relied on copies of canceled checks and the credible testimony of the taxpayer to estimate the amount of gambling losses).

Mrs. Lamb testified that petitioners regularly withdrew cash at casino ATMs to use for gambling purposes.  Mrs. Lamb testified that all ATM withdrawals identified with the address 25230 East Highway were withdrawals that petitioners made at ATMs at the Kickapoo Casino.[6]  The address Mrs. Lamb identified

---

[6]Mrs. Lamb identified a number of cash withdrawals on the bank account statements for account No. 6821 and one such withdrawal on the bank account statement for account No. 9194.  Mrs. Lamb further testified that petitioners could withdraw only $250 with respect to each of their ATM cards and that they often

(continued...)

**[*20]** matches the address Kickapoo Casino used on the information returns it issued with respect to Mr. Lamb. Accordingly, we find Mrs. Lamb's testimony to be credible.

Our review of petitioners' bank account statements shows that during 2008 petitioners withdrew the following amounts from ATMs at the Kickapoo Casino: (1) petitioners withdrew $23,317 from account No. 6821; and (2) petitioners withdrew $163 from account No. 9194.[7]

Petitioners regularly withdrew cash from casino ATMs and used this cash for gambling purposes. Petitioners both testified that they used the ATM withdrawals on their bank account statements to calculate the amount of gambling losses claimed on their return. Mr. Lamb testified that petitioners' gambling winnings and losses were approximately the same, while Mrs. Lamb testified that their gambling losses exceeded their winnings.

---

[6](...continued)
would withdraw $200 during one transaction and then withdraw another $40 in a second transaction. The amounts of the withdrawals made at the Kickapoo Casino ATMs are consistent with Mrs. Lamb's testimony.

[7]Although petitioners' bank statements show a number of other significant ATM withdrawals during 2008, petitioners did not introduce any evidence to show that these withdrawals occurred at a casino or that they made the withdrawals for personal gambling purposes.

**[*21]** At the conclusion of trial the Court directed petitioners and petitioners' counsel to provide to respondent copies of petitioners' bank statements with notations indicating which ATM withdrawals were attributable to gambling expenses. Petitioners failed to do so. On the record before us, we find that petitioners regularly withdrew cash from ATMs at Kickapoo Casino and used the entire amounts of those withdrawals, totaling $23,480, for gambling purposes. Consequently, we will allow petitioners a Schedule A deduction for gambling losses of $23,480.

B.     Schedule C and E Deductions

Generally, a taxpayer is entitled to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sec. 162(a); Am. Stores Co. v. Commissioner, 114 T.C. 458, 468 (2000). An expense is ordinary if it is customary or usual within the particular trade, business, or industry or if it relates to a transaction "of common or frequent occurrence in the type of business involved." Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Personal, living, or family expenses generally are not deductible. See sec. 262(a).

**[*22]**    1.    Schedule C Deductions

On a Schedule C attached to their untimely filed return, petitioners reported a net loss with respect to Gene's Muffler. Mr. Lamb testified that Gene's Muffler was a business owned and operated by his father and that Mr. Lamb was responsible only for any unpaid bills or building maintenance costs with respect to the muffler shop.

Petitioners failed to prove that they were engaged in a trade or business during 2008, and they did not introduce any substantiation of the expenses claimed on the Schedule C.[8] Accordingly, petitioners have failed to prove that they are entitled to a deduction for their claimed Schedule C loss.[9]

2.    Schedule E Deductions

On a Schedule E attached to their untimely filed return petitioners claimed a nonpassive loss of $5,759 attributable to their ownership of Gary Lamb Construction. Petitioners, however, did not introduce any credible evidence

---

[8]At trial petitioners attempted to introduce various documents purportedly relating to Gene's Muffler. We declined to admit petitioners' proffered evidence given their failure to comply with the Court's standing pretrial order.

[9]Although petitioners reported gross receipts of $44,462 on their Schedule C, respondent did not include this amount in calculating the increased deficiency asserted in respondent's amendments to answers. Accordingly, we do not consider whether petitioners had additional income attributable to the gross receipts reported on their Schedule C.

**[\*23]** regarding the income, expenses, and loss allegedly generated by Gary Lamb Construction. Accordingly, petitioners have failed to prove that they are entitled to deduct the claimed nonpassive loss attributable to Gary Lamb Construction.

IV.  Additions to Tax

Under section 7491(c), the Commissioner bears the burden of producing evidence with respect to the liability of the taxpayer for any penalty, addition to tax, or additional amount. See Higbee v. Commissioner, 116 T.C. at 446-447. To meet his burden of production, the Commissioner must come forward with sufficient evidence that it is appropriate to impose the addition to tax. Id. Once the Commissioner meets his burden, the taxpayer must come forward with evidence sufficient to persuade this Court that the determination is incorrect. Id.

Respondent determined that petitioners are liable under section 6651(a)(1) for additions to tax for failure to timely file a valid return for 2008. Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to timely file a return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985); United States v. Nordbrock, 38 F.3d 440, 444 (9th Cir. 1994). A failure to file a timely Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but nevertheless was unable to file the return

[*24] within the prescribed time.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a conscious, intentional failure to file or reckless indifference toward filing.  Boyle, 469 U.S. at 245.  The failure to timely file a return is not excused by the taxpayer's reliance on an agent to file the required return.  See id. at 252.

Petitioners stipulated that they failed to timely file Federal income tax returns for 2008.  In addition respondent introduced copies of petitioners' account transcripts confirming that petitioners failed to timely file their returns for 2008.  Consequently, we conclude that respondent has satisfied his burden of production under section 7491(c), and petitioners must come forward with evidence sufficient to persuade the Court that respondent's determinations are in error.  Petitioners appear to contend that their failure to timely file a return was due to reasonable cause because they relied on Mr. O'Laughlin to prepare and file their return for 2008.  Even if we were to accept Mrs. Lamb's testimony regarding petitioners' relationship and interactions with Mr. O'Laughlin as credible, petitioners' reliance on Mr. O'Laughlin does not excuse their failure to timely file their return.  Consequently, we sustain respondent's determinations as to the section 6651(a)(1) additions to tax.

**[*25]** Respondent also determined that petitioners are liable under section 6651(a)(2) for additions to tax for failure to timely pay tax shown on a return. Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of tax shown on a taxpayer's Federal income tax return on or before the payment due date, unless such failure is due to reasonable cause and not due to willful neglect.[10] The section 6651(a)(2) addition to tax applies only when an amount of tax is shown on a return filed by the taxpayer or prepared by the Secretary. Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may not be imposed unless the Secretary has prepared a substitute for return that satisfies the requirements of section 6020(b). See Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

Respondent introduced into evidence substitutes for returns that satisfy the requirements of section 6020(b), as well as copies of petitioners' account transcript for 2008. The substitutes for returns and the account transcripts establish that petitioners failed to pay the tax shown on the substitutes for returns. Respondent has satisfied the burden of production under section 7491(c).

---

[10]The sec. 6651(a)(2) addition to tax is 0.5% of the amount of tax shown on the return, with an additional 0.5% per month during which the failure to pay continues, up to a maximum of 25%.

**[\*26]** Petitioners did not introduce any evidence that they were unable to pay the tax owed or that they would have suffered undue hardship if they had paid the tax on the due date. See sec. 301.6651-1(c), Proced. & Admin. Regs. Accordingly, we hold that petitioners are liable for the section 6651(a)(2) additions to tax.

Respondent also determined that Mr. Lamb is liable for an addition to tax for failure to pay estimated tax under section 6654. Section 6654 imposes an addition to tax on an individual who underpays his estimated tax.[11] The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c) and (d). Each required installment of estimated tax is equal to 25% of the "required annual payment". Sec. 6654(d). The "required annual payment" is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return. Sec. 6654(d)(1)(A), (B), and (C). A taxpayer has an obligation to pay estimated tax only if he has a "required annual payment". Wheeler v. Commissioner, 127 T.C. at 212; see also Mendes v. Commissioner, 121 T.C. 308, 324 (2003).

---

[11]Unless a statutory exception applies, the sec. 6654(a) addition to tax is mandatory. See sec. 6654(a), (e); Recklitis v. Commissioner, 91 T.C. 874, 913 (1988).

[*27] Respondent introduced a copy of Mr. Lamb's account transcript for 2008 which shows that he did not make any estimated tax payments.  Respondent also introduced evidence that Mr. Lamb failed to file a Federal income tax return for 2007.  On the basis of this evidence as well as Mr. Lamb's concessions and our conclusions with respect to his income for 2008, we conclude that Mr. Lamb had a required annual payment for 2008.  Accordingly, we hold that Mr. Lamb is liable for the section 6654(a) addition to tax for 2008.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decisions will be entered under Rule 155.